**STATE BANKING BOARD et al.,**
**Appellants,**

v.

**PROPOSED CENTRAL PARK BANK OF DALLAS, Texas, et al., Appellees.**

No. 12229.

Court of Civil Appeals of Texas, Austin.

April 30, 1975.

Rehearing Denied May 21, 1975.

John L. Hill, Atty. Gen., John H. Banks, Asst. Atty. Gen., Austin, for State Banking Board, and others.

Larry Temple, Austin, for North Park National Bank of Dallas.

Arthur Mitchell, Austin, Kirk Patterson, Mitchell & Stewart, San Antonio, and Mitchell, George & Belt, Austin, for Proposed Central Park Bank of Dallas.

SHANNON, Justice.

The question for decision is whether the order of the State Banking Board of Texas, denying an application for a proposed bank in Dallas upon the basis of no public necessity and insufficient volume of business to indicate a profitable operation, is supported by substantial evidence. Vernon's Tex.Rev.Civ.Stat.Ann. art. 342–305, subd. A(1), (3). As we are of the opinion that the order is supported by substantial evidence, the judgment of the district court will be reversed.

Jack Diamond and others, appellees, filed an application with the State Banking Board of Texas for a proposed bank in Dallas, to be designated The Central Park Bank of Dallas. After hearing, the Board entered an order denying the application.

Appellees filed suit in the district court of Travis County to set aside the order of the Board and to require the Board to issue a charter. The trial court granted the relief sought. We will reverse the judgment of the trial court. Appellants are Robert Stewart, State Banking Commissioner of Texas; Jesse James, Treasurer of Texas; James Lindsey, member of the State Banking Board of Texas; and North Park National Bank of Dallas.

The Board's refusal of appellees' application was grounded upon its negative findings relating to Tex.Rev.Civ.Stat.Ann. art. 342–305, subd. A(1), (3). Those provisions read as follows:

"(1) A public necessity exists for the proposed bank;

.    .    .    .    .    .

"(3) The volume of business in the community where such proposed bank is to be established is such as to indicate profitable operation of the proposed bank;"

The trial court concluded that the negative findings of the Board were not supported by substantial evidence.

An appeal from an order of the State Banking Board of Texas is governed by the substantial evidence rule. Chemical Bank & Trust Company v. Falkner, 369 S.W.2d 427 (Tex.1963). As the Board's order is presumed to be supported by substantial evidence, it was appellees' burden to overcome that presumption. City of San Antonio v. Texas Water Commission, 407 S.W.2d 752 (Tex.1966); Isbell v. Brown, 196 S.W.2d 691 (Tex.Civ.App.1946, writ ref'd). To set aside the order, it was appellees' burden to demonstrate that the evidence, as a whole, was such that reasonable minds could not have concluded to deny the application. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946). Substantial evidence need not be much evidence, and though "substantial" means

more than a mere scintilla, or some evidence, it is less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. Southern Methodist University: Reavley, "Substantial Evidence and Insubstantial Review in Texas," 23 S.W.L.J. 239, 241 (1969). If there existed substantial evidence which would have supported either the grant or the denial of the application, the Board's order is entitled to be given full effect. Texas Aeronautics Commission v. Braniff Airways, Inc., 454 S. W.2d 199 (Tex.1970).

■ In the case at bar the Board refused to find affirmatively with respect to subsections (1) and (3), but instead found that there was no public necessity for the proposed bank and that the volume of business in the community was insufficient to indicate a profitable operation. Before the judgment of the trial court may be affirmed, we must hold that the order of the Board is not supported by substantial evidence and that the evidence so conclusively required an affirmative finding that the Board's refusal to make it was arbitrary or capricious. Gerst v. Cain, 388 S.W.2d 168 (Tex.1965). To the contrary, we are of the opinion that there existed substantial evidence at the time of the entry of the order which would have supported either the grant or the denial of appellees' application. The posture of the record being such, is follows that the order of the Board denying the application should be given effect. Texas Aeronautics Commission v. Braniff Airways, Inc., *supra*.

Appellees called Edward DeSpain, an expert witness, who testified that he had prepared an economic study concerning the feasibility of the proposed bank. DeSpain testified that Dallas and Dallas County had experienced a sustained population growth greater than that of the state as a whole for the period from 1960 to 1970. His testimony was that the population growth in the "primary and secondary" trade areas of the planned bank between 1970 and 1972 was even higher than that of the city and county of Dallas. The levels of income in the primary and secondary trade areas of the said proposed bank were higher than other areas of Dallas. Appellees' evidence was that over 44% of the families in 1970 in those service areas had incomes over $15,000. Their evidence was also that the increase in deposit of area banks was greater than the increase in Dallas as a whole, and that the profitability of area banks had increased steadily.

Appellees' exhibits showed continuous new construction of "housing units" in the primary service areas between 1969 and 1972. Appellees also produced evidence of the traffic count on the North Central Expressway as being in excess of 75,000 each day.

Four of the directors of the proposed bank testified as to the substantial demand deposits which they could, and would, cause to be placed into the new bank. DeSpain was of the view that upon those demand deposits being added to the capital contributions of the stockholders and to the expected accounts in the bank, the profitability of the bank was "absolutely guaranteed."

DeSpain concluded that a public necessity existed for the proposed bank, and that the volume of business in the community where the proposed bank was to be located was such as to indicate a profitable operation.

In opposition to the intended bank, appellant North Park National Bank called Donald F. Jackson, an associate professor of finance at Southern Methodist University and an associate director of the Southwest Graduate School of Banking. He testified as to the reasons for his opinion that there was no necessity for the proposed bank and that the volume of business in the community in which the proposed bank was to be located was not such as to indicate a profitable operation.

The proposed bank was to be located at 10300 North Central Expressway at the in-

tersection of Meadow Road and the expressway. Jackson was well acquainted with the proposed bank and the surrounding geographic area since he had lived in that area for about seventeen years. Jackson testified concerning certain geographic impediments to the successful operation of the bank at the proposed location. He noted that a sizable portion of the land east of the site of the proposed bank is used by a country club and is a flood plain which cannot be developed. Another geographic impediment to further growth of the area is a large gravel pit at the corner of the expressway and Forest Lane and a vacant area which would probably remain so because of its rough topography.

Another negative factor as to the profitability *vel non* of the bank is the lack of easy accessibility of the site of the proposed bank to the area it proposed to serve. Jackson testified that the more inaccessible property is, the slower it is to develop. He commented that there is not a good road network from the west to the eastern part of the service area. For example, Meadow Lane, the primary east-west artery, is a one-way street for a period of time in the mornings and again in the afternoons on school days.

Jackson was of the opinion that the North Central Expressway, the major north-south artery going in front of the proposed site, is an artificial barrier which discourages persons in the western part of the primary trade area from going to the eastern part where the proposed site is located.

According to Jackson there are no significant numbers of employees and no significant pockets of employment within the primary trade area of the proposed bank. Also of significance to Jackson is that there is no retail or commercial activity within the primary trade area to serve to draw potential customers into the area.

Jackson observed that most of the developed portion of the primary trade area is closer to an existing bank than to the site of the proposed bank. Also of significance to the availability of deposits, Jackson testified that a significant number of persons who live in the area still maintain their business connections with downtown banks.

Also a relevant factor for consideration, according to Jackson, is whether or not the subscribing stockholders reside within the area to be served by the bank. In this connection the record shows that most of the subscribers to the proposed bank do not live in Dallas.

In their original brief and by a supplementary brief, appellees claim that the Board's denial of their application for the proposed bank was arbitrary and capricious as demonstrated by the Board's entry of an order four months later permitting Greenville Avenue State Bank to relocate near the site of the proposed bank. In passing on Greenville's application for relocation appellees say that the Board necessarily must have found the existence of public necessity and profitability of operation, whereas four months previously the Board had denied the existence of those requirements in appellees' application.

To understand appellees' position some factual statement is necessary. On August 8, 1972, appellees filed their application for their proposed bank at North Central Expressway and Meadow Road. About eight months later and on April 23, 1973, Greenville Avenue State Bank filed an application for a change of domicile to Abrams Road at Fair Oaks. Greenville's application was denied by the Board on July 25, 1973. On September 12, 1973 the Board denied appellees' application. After that denial, and on September 27, 1973, Greenville filed another application for change of domicile to be located at Greenville Avenue and Walnut Hill Lane, seven-tenths of a mile from the location of appellees' proposed bank. On January 16, 1974, the Board approved Greenville's second application for change of domicile.

Appellees argue that the later grant of the Greenville application showed, as a mat-

ter of law, arbitrariness by the Board in denying their application " . . . by the fact that the economic studies in support of the two Greenville applications were virtually identical, even though one of these studies was submitted before the order on the Central Park application and one was submitted after the State Banking Board entered such order on Central Park Bank."

By attacking the Board's grant of Greenville's second application in January of 1974, appellees seek to bolster their argument that the Board's denial of their application in September of 1973, was arbitrary and capricious. Appellees' argument is bottomed upon the unstated premise that the Board was bound in the second Greenville hearing by its findings of no necessity and lack of profitability in its order denying appellees' application. Though not articulated, appellees' argument is that the September, 1973, order was *res judicata* of the second Greenville application. The *res judicata* argument might be more appropriate if this were an appeal from the order of the Board granting the second Greenville application.

■ Aside from the propriety of appellees' argument, that argument necessarily assumes an identity of issues, which assumption, we think, does not bear examination. More than four months had elapsed between the date of appellees' application and the granting of Greenville's second application. This record does not show what the economic facts were as of January 16, 1974, the date of the approval of Greenville's application. Also, the site of appellees' proposed bank was different from the site of Greenville's relocation. Nothing in the record reflects the accessibility to the Greenville relocation, whereas Jackson testified that appellees' proposed site was not a likely one. See 2 Cooper, State Administrative Law, § 5, p. 521; § 8, p. 527, 2 Amer.Jur.2d Administrative Law, § 502 (1962).

We reverse the judgment, and here render judgment affirming the order of the State Banking Board of Texas.

Reversed and rendered.