**UNITED SAVINGS ASSOCIATION OF TEXAS, Appellant,**

v.

**L. Alvis VANDYGRIFF, Savings and Loan Commissioner of Texas, et al., Appellees.**

No. 13087.

Court of Civil Appeals of Texas, Austin.

Jan. 9, 1980.

Rehearing Denied Jan. 25, 1980.

Larry Temple, Austin, for appellant.

Mark White, Atty. Gen., Thomas M. Pollan, Thomas A. Rutledge, Asst. Attys. Gen., Austin, for Savings and Loan Commissioner.

William J. Mounce, Grambling, Mounce, Sims, Galatzan & Harris, El Paso, for Pan American Savings and Loan Ass'n.

O'QUINN, Justice.

Pan American Savings and Loan Association, domiciled in El Paso, filed application with the Savings and Loan Commissioner for permission to change the association's name to Southwestern Savings and Loan Association. Thereafter United Savings Association, with its principal office in Houston, timely filed its protest in opposition to the application.

After hearing in May of 1978 the Commissioner in July entered an order granting the application of Pan American to change its name to Southwestern. Upon appeal by United Savings Association to district court, the trial court sustained and affirmed the order of the Commissioner.

United Savings Association appeals from judgment of the district court and brings six points of error. We will affirm the judgment of the trial court.

Under its points of error, United Savings contends at the outset that the Commissioner's order is not supported by substantial evidence.

The standard prescribed in determining the possibility of a name change by a savings and loan association is provided in Article 852a, § 2.12, V.A.T.S., in this language:

" . . . No certificate of incorporation of a proposed association *having the same name* as any other association authorized to do business in this State under this Act or *a name so nearly resembling it as to be calculated to deceive* shall be issued by the Commissioner . . ." (Emphasis added).

Although Section 2.12 specifies "proposed association," this Court has held that the statute applies to the name change also of an *existing* association. *Lewis v. First Federal Savings and Loan Ass'n of Dallas,* 524 S.W.2d 783, 785 (Tex.Civ.App. Austin 1975, no writ). There it was pointed out that Section 2.12 adopts " . . . the rule that equity will protect a corporation in the use of a name selected and used by it. That rule likewise applies where a subsequent corporation attempts to use a similar name to that of an existing corporation. *Board of Insurance Commissioners v. National Aid Life,* 73 S.W.2d 671 (Tex.Civ.App. Austin 1934, writ ref'd)."

■ The Commissioner was required to determine whether the proposed name change of "Pan American Savings and Loan Association" to "Southwestern Savings and Loan Association" would be to allow the use of the same name or a deceptively similar name employed by another association. The Commissioner determined that it would not and allowed the name change. Appellant contends, as stated above, that the Commissioner's determination was not supported by substantial evidence.

■ Initially, appellant expresses a doubt as to applicability of the substantial evidence rule. We are of the view that Section 11.12, of the Savings and Loan Act, as construed by the Supreme Court in *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966), is contrary to appellant's contention and is controlling in this case. Section 11.12(5)(b) of the Savings and Loan Act sought to provide for a "preponderance of evidence" review.

In *Gerst,* the Supreme Court held that this provision violated Article II, Section 1, of the Constitution of Texas, in its provision for the separation of powers, and that review will be governed by the substantial evidence test. The Court also held that the last phrase of Section 11.12(5)(b) limits the scope of judicial review to the record made before the agency. See: McCalla, *The Administrative Procedure and Texas Register Act,* 28 Baylor L.Rev. 445, 486 (1976).

The standard of review, in determining the validity of orders of the Savings and Loan Commissioner, was examined by the Supreme Court in *Gerst v. Guardian Savings and Loan Association,* 434 S.W.2d 113, 114–15 (Tex.1968):

"His orders are presumed to be a valid exercise of the power and discretion conferred on him. The courts have no authority simply to substitute their judgment for his to determine whether the Commissioner reached the proper fact conclusion on the basis of conflicting evidence. On the other hand, the Commissioner is not empowered to exercise unbridled discretion; his findings must be reasonably supported by substantial evidence; i. e., *they may not be arbitrary, capricious, and made without regard to the facts. Gerst v. Oak Cliff Savings and Loan Ass'n,* 432 S.W.2d 702 (1968); *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.Sup.1967); *Gerst v. Cain,* 388 S.W.2d 168 (Tex.Sup. 1965); *Phillips v. Brazosport Savings and Loan Ass'n,* 366 S.W.2d 929 (Tex.Sup. 1963)." (Emphasis added).

The sole obligation of the court, under the substantial evidence rule, is to review the entire record and determine " . . . whether the evidence as a whole is such that reasonable minds could have reached the same conclusion as that of the Banking Board . . ." *First National Bank, Grapevine v. State Banking Board of Texas,* 419 S.W.2d 878, 880 (Tex.Civ.App. Austin 1967, writ ref'd n. r. e.). The burden of proof is upon the party appealing the order to show it invalid. *Roquemore v. Texas Real Estate Commission,* 501 S.W.2d 368, 369 (Tex.Civ.App. Austin 1973, no writ).

The record may contain evidence which preponderates one way and yet include substantial evidence to support an order reaching an opposite result. *Lewis v. Metropolitan Savings and Loan Association,* 550 S.W.2d 11, 13 (Tex.1977). "Substantial evidence need not be much evidence, and though 'substantial' means more than a mere scintilla, or some evidence, it is less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence." *Purolator Courier Corp. v. Railroad Commission,* 548 S.W.2d 486, 490 (Tex.Civ.App. Austin 1977, writ ref'd n. r. e.); *State Banking Board v. Proposed Central Park Bank of Dallas,* 522 S.W.2d 717 (Tex.Civ.App. Austin 1975, writ ref'd n. r. e.); Reaveley, *Substantial Evidence and Insubstantial Review in Texas,* 23 Sw.L.J. 239, 241 (1969).

"The test in determining whether an administrative decision finds reasonable support in substantial evidence is whether the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action." *Hardy Street Investors v. Texas Water Rights Commission,* 536 S.W.2d 85, 87 (Tex.Civ. App. Waco 1976, writ ref'd n. r. e.).

The Commissioner took official notice of the names of all associations holding charters from the State and determined that there were no chartered savings and loan associations having the name "Southwestern Savings and Loan." This was done in accordance with the provisions of Article 6252–13a, Sec. 14(q), V.A.T.S.:

" . . . official notice may be taken of all facts judicially cognizable. In addition, notice may be taken of generally recognized facts within the area of the agency's specialized knowledge."

Chartering of savings and loan associations is peculiarly within the province of the Commissioner. The Commissioner's official records reflect every such institution doing business in the State. That the records revealed there were no chartered savings

and loan associations in Texas having the name "Southwestern Savings and Loan" was a fact "generally recognized" to be " . . . within the area of the agency's specialized knowledge," and was officially cognizable by the Commissioner.

The Commissioner also determined that the name "Southwestern Savings and Loan" was not so similar to that of any other association doing business in Texas " . . . as to be calculated to deceive . . . ." The record before the agency reflects the following pertinent facts.

At one time, long prior to this proceeding, there existed a "Southwestern Savings Association" in Houston, but, as the result of a merger with Southwestern Group Financial, the Houston association changed its name from Southwestern to "United Savings Association of Texas." Southwestern Group Financial owned a savings and loan institution in El Paso County, but that association never used the name "Southwestern" but instead always was known as "Surety Savings and Loan Association." It was not general knowledge in the financial community that Surety was owned by Southwestern Group Financial. Southwestern Group Financial sold Surety in 1977, and Pan American Savings and Loan was chartered by the State in 1972. Pan American is a small association doing business only in El Paso County, removed some 700 miles west from Houston and Harris County.

On January 31, 1978, Pan American filed its application with the Savings and Loan Commissioner to change its name to "Southwestern Savings and Loan Association." At the time of the hearing on May 5, 1978, no savings and loan association in Texas was using "Southwestern" as part of its name. There are other savings and loan associations in Texas using the word "Southwest" in their names; but these institutions were advised of Pan American's application and thereafter made no objection to the use of "Southwestern" by Pan American.

■ The Commissioner's decision was supported by substantial evidence found in the record upon which reasonable minds could have justified the conclusion reached by the Commissioner. *Hardy Street Investors v. Texas Water Rights Commission, supra.*

Under its fifth point of error, United Savings contends that the " . . . order of the Savings and Loan Commissioner [fails to] contain the requisite concise and explicit statement of underlying facts supporting its ultimate findings and conclusions as mandated by Section 11.11 of the Texas Savings and Loan Act and Section 16(b) of the Administrative Procedure Act."

The attorney general, in behalf of the Commissioner on appeal, insists the contention of United Savings is without merit and " . . . that, in any case, appellant has failed to preserve that complaint properly, even if it were meritorious." It becomes an initial question to determine whether the issue of failure in the order to state the underlying facts supporting the ultimate findings and conclusions is properly before this Court.

Section 16(e) of Article 6252–13a, the Administrative Procedure Act, provides that " . . . *a motion for rehearing* [before an administrative agency] *is a prerequisite to an appeal . . . .*" to a court of review, except in cases of "imminent peril to the public health, safety, or welfare." (Emphasis added).

This provision of the Act has been determined, in at least two savings and loan cases, to be a jurisdictional requirement. *First Federal Savings and Loan Association of Breckenridge, Texas v. Vandygriff,* 576 S.W.2d 904 (Tex.Civ.App. Austin 1979, holding expressly approved by Supreme Court, 586 S.W.2d 841); *Mahon v. Vandygriff,* 578 S.W.2d 144 (Tex.Civ.App. Austin 1979, writ ref'd n. r. e.).

United Savings filed its motion for rehearing before the Commissioner, and in paragraph VIII of the motion complained of the lack of an explicit statement of underlying facts in the order supporting the Commissioner's decision, in this language:

"The Commissioner erred in failing to meet the requirements of Section 11.11 of

the Texas Savings and Loan Act and Section 16(b) of the Administrative Procedure Act of Texas."

The attorney general argues that *specific* grounds of error must be included in the motion for rehearing in order to preserve error, and that, since United Savings failed so to specify the grounds of error, movant waived the point of error on appeal. United Savings contends, in answer, that " . . . reference to exact statutory provisions surely would suffice to meet the minimum standards that anyone might impose," and that the motion was sufficient to preserve the point of error attacking want of underlying facts in the order.

■ Although neither the Legislature nor the courts have stated precise requirements for an effective motion for rehearing before an administrative agency, we are of the view that Section 16(e) of Article 6252–13a requires that the motion for rehearing be sufficiently definite to apprise the Commissioner of the error claimed and to allow the Commissioner opportunity to correct the error or to prepare to defend it. We reach this conclusion after review and examination of the legislative history surrounding adoption of the Administrative Procedure Act.

The legislative history of the Act is useful in clarifying the purposes of the Legislature in requiring that motion for rehearing be a prerequisite to appeal. It appears that feasibility of an administrative procedure act became the subject of study in Texas early in the decade between 1950 and 1960. Two versions of the so-called Model Act were promulgated: Model State Administrative Procedure Act of 1946 (9C U.L.A. 179 (1957)) and Revised Model State Administrative Procedure Act of 1961 (9C U.L.A. 136 (Cum.Supp.1967)).

Article 6252–13a, which became effective January 1, 1976, is substantially the same as the 1961 revision. The 1946 and 1961 versions of the Act made no mention of a motion for rehearing being a prerequisite to appeal. This provision was added by the Legislature in the course of passage of the Act, and seems to be unique to Texas practice.

"The proposed Administrative Procedure Act was introduced in 1971 as SB 16 and HB 761, but did not come to a vote in either house. The bill was introduced in essentially the same form in 1973 as SB 81 and HB 248." McCalla and Fontaine, *The Administrative Procedure and Texas Register Act— An Overview,* in State Bar of Texas—Texas Administrative Law and Procedure A–2 (1976). Section 14(4) of SB 81 added the requirement of a motion for rehearing and was codified in the 1976 Act as Section 16(e). "Although the Senate passed SB 81 with only four nay votes recorded, the House took no action. The bill was introduced again in 1975 as SB 41 and HB 531." McCalla and Fontaine, *supra.* SB 41 contained the same provision for motion for rehearing that was contained in Section 14(4) of SB 81. Guinn, *The Post Hearing Stage,* in State Bar of Texas—Texas Administrative Law and Procedure G9–10 (1976).

The Report of the House Judiciary Committee provided a section-by-section commentary on the proposed Administrative Procedure Act. In reference to what is now Section 16(e), the Committee provided:

"A formal decision, except an emergency decision, is final 15 days after rendition unless a motion for rehearing is filed. Generally, the filing of a motion for rehearing is made a prerequisite to judicial review. This filing requirement (*similar to that which requires a motion for new trial in civil cases [Rule 324]*) will not build in much delay and may occasionally spare the expense of a court appeal while *allowing the agency to correct its own errors.*" Report of House Judiciary Committee, authorized by HR 96, 63rd Leg., December 31, 1974, p. 19. (Emphasis added).

"Following passage by the Senate of SB 41, the bill was amended to incorporate the provisions of the Texas Register Act as well as numerous other changes. The final product passed the Senate by a viva-voca vote and the House by a vote of 134 yeas, 0 nays." McCalla and Fontaine, *supra.*

The commentary of the Judiciary Committee demonstrates that the Legislature, in providing for mandatory motion for rehearing in administrative proceedings, grounded its intent on provisions of Rule 324, Texas Rules of Civil Procedure, the "motion for new trial". practice prior to subsequent amendment of the Rule by the Supreme Court, effective January 1, 1978. It is noted that although the amendment of Rule 324 eliminated the requirement for motion for new trial in jury cases in most, though not all, instances, the specificity requirements of Rules 321 and 322 remain effective if motion for new trial is required.

At the time of enactment of the Administrative Procedure Act, Rule 324 provided:

"In all cases tried in the county or district court, where parties desire to appeal from a judgment of the trial court, a motion for new trial shall be filed as a prerequisite to appeal   .   .   .   ."

If a motion for new trial was required, Rules 321 and 322 prescribed the required form it was to take:

"Rule 321.  Form.

Each ground of a motion for a new trial or in arrest of judgment shall briefly refer to that part of the ruling of the court, charge given to the jury, or charge refused, admission or rejection of evidence, or other proceedings which are designated to be complained of, in such way as that the point of objection can be clearly identified and understood by the court."

"Rule 322.  Generality to Be Avoided. Grounds of objections couched in general terms—as that the court erred in its charge, in sustaining or overruling exceptions to the pleadings, and in excluding or admitting evidence, the verdict of the jury is contrary to law, and the like—shall not be considered by the court."

Under Rule 324 practice, prior to 1978, failure to assign specific error in motion for new trial constituted waiver of that ground in cases in which motion for new trial was a prerequisite for appeal. *St. Louis Southwestern Ry. Co. v. Gregory*, 387 S.W.2d 27, 29 (Tex.1965); *Allandale Nursing Home,* *Inc. v. John Bremond Company, Inc.*, 514 S.W.2d 958 (Tex.Civ.App. Austin 1974, writ ref'd n. r. e.).

■ "In enacting statutes, the Legislature is presumed to have taken notice of court decisions construing prior analogous statutes, and judicial construction must therefore be read into the subsequent statute." *Humble Pipe Line Co. v. State*, 2 S.W.2d 1018 (Tex.Civ.App. Austin 1928, writ ref'd); *Walker v. Thetford*, 418 S.W.2d 276 (Tex.Civ.App. Austin 1967, writ ref'd n. r. e.).

This principle of statutory construction has been applied to the Administrative Procedure Act in *Houston Mobilfone, Inc. v. Public Utility Commission*, 565 S.W.2d 323 (Tex.Civ.App. Eastland 1978, no writ).  The issue in that case was whether appellant's motion for review of the granting of a certificate of convenience and necessity by the Utility Commission was timely filed. The Court noted the similarity of language in the Procedure Act and that contained in the Texas Rules of Civil Procedure and held:

"This rule [329b(4)] was effective and had been construed by the courts of this state when the Legislature enacted the Administrative Procedure and Texas Register Act.  In such event, the Legislature is presumed to have taken notice of the court's decisions construing Rule 329b(4), T.R.C.P., and such judicial construction must, therefore, be read into Section 16(e) of the Administrative Procedure Act." (p. 326, col. 1).

As has been pointed out, this is not to say that administrative pleadings should be ".   .   .   tested by the technical niceties of pleadings and practice required in court trials." *Thacker v. Texas Alcoholic Beverage Commission*, 474 S.W.2d 258, 260 (Tex. Civ.App. San Antonio 1971, no writ).  "The key to pleading in the administrative process is nothing more than *an opportunity to prepare.*"  1 Davis, Administrative Law Treatise, § 8.04 at p. 524 (1958).  (Emphasis added).  A motion for rehearing under Section 16(e) of the Procedure Act is sufficient

if it gives the agency sufficient notice of alleged error so as to allow the agency to correct the error or to prepare to defend it.

We must presume that the Legislature expressed an intent when it provided for a "motion for rehearing." Its purpose in providing for Section 16(e) was ". . . to allow . . . the agency to correct its own errors," if we are to accept the Report of House Judiciary Committee, *supra*. For the agency to be able to correct its errors, it must be on notice as to what the movant alleges constitutes error. Technical specificity is not required, it is true, but the agency should not be put in a position of having to guess what error is alleged. If any lesser degree of specificity had been intended by the legislature, we must presume that it would have provided for a mere "notice of appeal" as was then authorized by Rule 354(c).

We are aware that the Beaumont Court of Civil Appeals, in *Railroad Commission of Texas v. Missouri Pacific Railroad Company*, 588 S.W.2d 640 (Tex.Civ.App. Beaumont 1979, writ pending), held in 1979 that a motion for rehearing which provided that an order issued by the Commission ". . . is contrary to the law applicable to the case, and is without support in the evidence . . ." was sufficient to preserve error on appeal.

■ That case is distinguishable from the case in this appeal. In *Missouri Pacific*, the assignment of error claimed the order was not supported by substantial evidence. In an administrative review, if it is alleged that a finding is "without support in the evidence," the measure of review is by the substantial evidence rule. That issue is inevitably raised, whether by name or by implication.

■ In the present case United Savings alleged in motion for rehearing only that the Commissioner failed to meet the requirements of Section 11.11 of the Savings and Loan Act and Section 16(b) of the Procedure Act. Section 11.11 provides for (1) notice of hearing, (2) opportunity to be heard, (3) keeping of formal records at the

hearing, (4) findings of fact and conclusions of law and statements of underlying facts, (5) finality and appeal, and (6) notification of decisions. Section 16(b) of the Procedure Act provides for (1) findings of fact and conclusions of law, (2) underlying statement of fact findings, (3) rulings on each fact finding, and (4) notice of decision.

From mere reference to the statutes, the Commissioner could not be expected, from this generality, to discover the error and to correct his mistake, if any, or to prepare a justification of it. United Savings, in its motion for rehearing did not point out or suggest that the Commissioner's order contained no underlying facts supporting the ultimate findings. This might have provided specificity sufficient to preserve the error on appeal, although we are not called on to decide that question and make no decision as to it. The motion was not sufficiently specific, and we hold that the point of error was waived and is not properly before the Court.

Under its sixth and final point of error United Savings claims error in the trial court's approval of the Commissioner's order of July 25, 1978, for the reason that the order is ". . . invalid and in excess of the statutory authority of the Commissioner because the order authorizes the change of name but provides that such name change shall not be effective until July 1, 1979."

Section 19(e)(2) of the Administrative Procedure Act provides that the reviewing court ". . . shall reverse or remand the case for further proceedings *if substantial rights of the appellant have been prejudiced* because the administrative findings, inferences, conclusions, or decisions are: . . . (2) *in excess of the statutory authority* of the agency . . ." (Emphasis added).

The application of Pan American requested that the name change be effective March 1, 1978. By amended application Pan American requested an effective date of April 3, 1978. United Savings claims that the Commissioner, in granting an effective date of July 1, 1979, entered an order that went beyond the application or pleading

and that the Commissioner is without authority to grant any right that was not specifically requested.

United Savings also contends that ". . . the action by the Commissioner delaying for a year the use of the name is tantamount to a determination or a finding by the Commissioner that the application will or may meet all requirements necessary at some future time." United Savings insists that the Commissioner exceeded his authority by making his determination on future, instead of present, facts.

■ To determine whether an agency action is "in excess of statutory authority," so as to require reversal or remand under the provisions of Section 19(e)(2), the Supreme Court has held it necessary to compare the claimed excessive action with the pertinent statutory authority. *Railroad Commission of Texas v. Graford Oil Corporation*, 557 S.W.2d 946 (Tex.1977); *Gage v. Railroad Commission of Texas*, 582 S.W.2d 410 (Tex.1979).

■ Article 342–205(d), V.A.T.S., provides:

". . . such Savings and Loan Commissioner shall . . . supervise and regulate, in accordance with the rules and regulations promulgated by the Savings and Loan Commissioner . . . all savings and loan associations doing business in this State . . ." This broad grant of authority recognizes that the Savings and Loan Commission was ". . . created to centralize expertise in a certain regulatory area and, thus, is to be given a large degree of latitude by the courts in the methods by which it accomplishes its regulatory function." *City of Corpus Christi v. Public Utility Commission*, 572 S.W.2d 290, 297 (Tex.1978); *Railroad Commission of Texas v. City of Fort Worth*, 576 S.W.2d 899, 903 (Tex.Civ.App. Austin 1979, writ ref'd n. r. e.). The Commissioner, as head of the agency, must be allowed to exercise his discretion in utilizing this "centralized expertise," as long as in doing so, he does not exceed express statutory authority granted.

■ The printed form application, supplied by the agency, for name change, includes a blank for "*proposed* effective date." Appellee first requested March 1 and later amended, asking for April 3. Hearing on the application was conducted on May 5, 1978. It was impossible for either the March 1 or April 3 "proposed effective date" to be met in the subsequent order. "Proposed" clearly implies that such date is merely a starting point and basis for further proceedings on the application. If a proposed date becomes impossible because of unavoidable delay in due course of the hearing procedure, it is within the Commissioner's discretion to supply a date he finds to be reasonable.

■ United Savings claims that a date *one year from entry of the order is not reasonable* and beyond the Commissioner's discretion. In oral argument before this Court, counsel for United Savings did not dispute the Commissioner's discretion to delay effectiveness for 30 or 60 days. Although delay of one year may appear unusual, under the facts of this case the Commissioner could have found a longer period necessary to afford United Savings opportunity to disassociate itself completely from its former name and to accord Pan American time in which to effect the change in due order. We are unable to declare, as a matter of law, that the Commissioner abused his statutory authority to "regulate savings and loans in Texas" by extending the effective date of the order beyond a period of *a few weeks or a few months.*

The claim by United Savings that postponement amounted to agency action based on future events also is without merit. The Commissioner's decision was based on substantial evidence in the record. That evidence dealt with present, not future, events. Merely providing an effective date in the future does not of necessity amount to a determination based on future events.

■ Even if the agency had exceeded its statutory authority, under Section 19(e) we may reverse or remand *only* if "substantial rights of appellant" have been preju-

diced by the unauthorized agency action. We construe this to mean that, in order to complain, United Savings must show some right that is subjected to harm because of the agency's action. United Savings has shown no harm to itself by the delay of one year. The decision to allow the name change will not be influenced by the decision to make it effective one year from rendition of the order. If anything, United Savings should benefit from postponement, which allows a longer period in which to disassociate itself in the public mind from the name "Southwestern Savings." Even if the Commissioner exceeded his statutory authority, we find no substantial rights of United Savings prejudiced by the Commissioner's delay of the effective date of the order.

For the reasons stated, the judgment of the trial court, approving and affirming the Commissioner's order, is in all things affirmed.