AIRLINE, INC., Appellant,

v.

RAILROAD COMMISSION OF TEXAS, et al., Appellees.

No. 14593.

Court of Appeals of Texas, Austin.

May 6, 1987.

James K. Presnal, Austin, for appellant.

Jim Mattox, Atty. Gen., Douglas Fraser, Asst. Atty. Gen., Austin, for Railroad Commission of Texas, et al.

James M. Doherty, Austin, for Allied Van Lines, Inc., Central Forwarding, Inc., North American Van Lines of Texas, Inc.

Before SHANNON, C.J., and EARL W. SMITH [1] and GAMMAGE, JJ.

GAMMAGE, Justice.

The Railroad Commission issued a final order on November 7, 1983, cancelling Airline, Inc.'s Specialized Motor Carrier Certificate. Airline appeals from the district court judgment affirming that order. We will affirm the judgment of the district court.

The certificate in question was issued to Barnett & Gardenhire, Inc. in 1959, authorizing the transportation of livestock, household goods and used office furniture, oil field equipment and water pipe. It is undisputed that from 1959 until February of 1982, a period of approximately twenty-two years, the only commodity transported under the certificate was livestock.

In November of 1981, Barnett & Gardenhire began negotiations with Dennis Forrest for the sale of the certificate. The parties were aware that if the transaction were pursued as a certificate sale, as opposed to a stock sale, they would have to file a sale and transfer application seeking approval of the Commission and pay a transfer fee equal to ten percent of the amount paid as consideration for the transfer of the certificate. Tex.Rev.Civ.Stat. Ann. art. 911b, § 6(f) (1964). They also realized that scrutiny by the Commission might result in cancellation of all or a portion of the certificate for dormancy. Article 911b, § 12(b); *Brown Express, Inc. v. Railroad Commission*, 415 S.W.2d 394 (Tex.1967); *Herrin Petroleum Transport Equipment Corp. v. Railroad Commis-*

---

1. Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code § 73.012 (Supp.1987).

*sion,* 619 S.W.2d 588 (Tex.Civ.App.1981, writ ref'd n.r.e.). In order to avoid the transfer fee and possible cancellation of the certificate, the parties structured the transaction as a sale of stock. C & F Oilfield Services, Inc. was incorporated, with Dennis Forrest as president, for the purpose of acquiring the stock of Barnett & Gardenhire. The contract between Barnett & Gardenhire and C & F provided that on the date of the stock sale, Barnett & Gardenhire would have no liabilities and the only asset remaining in the corporation would be the certificate. At the time of the sale in February 1982, Barnett & Gardenhire, in fact, had no assets other than the certificate.

Sometime thereafter C & F began transporting household goods and oilfield equipment pursuant to the permit. On July 15, 1982, C & F's articles of incorporation were amended to change the corporate name to Airline, Inc.

On December 21, 1982, Allied Van Lines, Inc., Central Forwarding, Inc., North American Van Lines of Texas, Inc., and several other carriers filed a complaint with the Railroad Commission alleging among other things that the household goods portion of Airline's certificate should be cancelled for dormancy. Standing of these carriers is not challenged.

At the hearing before the Commission, Airline offered as evidence an annual operating report purporting to summarize certain financial data regarding 1982 operations under the certificate. The only other evidence submitted by Airline was an "Agent's Roster" listing the agents representing it in the movement of household goods as required by 16 Tex.Admin.Code § 5.252. At the request of Allied, et al., the Commission issued subpoenas to compel Airline's president to attend the hearing and to produce certain records pertaining to transportation performed by Airline under its certificate. Airline refused to honor the subpoenas. A second hearing was held at which Airline presented no evidence. The Commission's final order, issued in No-

vember 1983, cancelled Airline's certificate on the basis of dormancy.

The term "dormant" is not statutory, but is used to refer to a certificate, the holder of which "has discontinued operation, or has violated, refused or neglected to observe the commission's lawful orders, rules, rates, or regulations or has violated the terms of said certificate or permit." Article 911b, § 12(b). The dormancy concept is based upon the perception that "... any substantial interruption of one carrier's service tends to result in expansion of other facilities to meet the continuing needs of shippers, and thus to cause overcrowding if the suspended service is resumed." *Gregg Cartage & Storage Co. v. United States,* 316 U.S. 74, 83, 62 S.Ct. 932, 936, 86 L.Ed. 1283 (1942).[2] That the Commission may revoke a certificate upon a finding of dormancy is well settled. Article 911b, § 12(b); *Brown Express, Inc. v. Railroad Commission, supra; Herrin Petroleum Transport Equipment Corp. v. Railroad Commission, supra.*

In its first point of error, Airline argues that the Commission's finding of dormancy is not supported by substantial evidence in light of evidence presented by Airline that revenues in excess of $1,099,000 were generated by operations under the certificate in 1982. We disagree.

■ Airline argues that it is a new owner of the certificate and any failure on the part of the former owner is irrelevant to Airline's authority to operate under the certificate. Airline states in its brief: "The fact that the former owner may have transported one commodity and not the other does not limit a subsequent owner's activity under the Certificate." Airline's premise is erroneous; there is no former or subsequent owner in this case. The certificate is and always has been held by the same corporation. The fact that corporate stock changed hands or that the articles of incorporation were amended to change the corporate name is irrelevant. The corporation is still the same entity. Indeed, in this proceeding Airline has claimed the stock transfer transaction was *not* a "sale or

**2.** In *Gregg,* the "substantial interruption" of the

carrier's service was for a period of 69 days.

transfer" of the certificate precisely because ownership of the certificate did not change. Airline chose to structure the transaction as a stock transfer in order to avoid the consequences of a direct sale of the certificate and cannot now divorce itself from the shortcomings of its predecessor shareholders by claiming to be a "new" owner.

■ The Railroad Commission must be allowed discretion in exercising its regulatory function, but it must act within the confines of its statutory grant of authority. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(e); Art. 911b, § 4. The language of Art. 911b, § 12(b) is broad. It provides the Commission may revoke a certificate if it finds the certificate holder has "discontinued operation." The Commission found that the certificate was issued in 1959, and there was no evidence the corporation ever transported anything other than livestock before February 1982. These findings are not challenged by Airline and are supported by substantial evidence. They reflect that the corporation discontinued operations and support the Commission's ultimate finding of dormancy. The revival of operations for several months does not preclude such a finding, especially in view of the rationale underlying cancellation for dormancy. *See, Gregg Cartage & Storage Co. v. United States, supra.* Airline's first point of error is overruled.

■ Airline argues in its second point of error that the trial court erred in sustaining the order of the Commission because dormancy is not an issue properly before the Commission unless a sale and transfer application is pending.

We note that no such qualification exists in Art. 911b. Airline argues, however, that the Commission promulgated an adjudicative "rule," within the meaning of Tex.Rev. Civ.Stat.Ann. art. 6252–13a, § 3(7) (Supp. 1987), precluding consideration of dormancy outside a sale and transfer application proceeding. Security Couriers, Inc.—Complaint—Executive Courier Service, Inc. of Texas, Docket No. 003428AACP (March 15, 1982). Copies of the final order and proposal for decision in *Security Couriers* are included in the record for our reference. The pertinent finding made by the Commission in that proceeding is set out below:

> The above-referenced complaints filed with this Commission are all actions against carrier certificates that are not subject to any pending sale, transfer or lease proceedings. The complaints *do not contain an offer of specific proof and allege no fact other than the dormancy of the involved certificate.* An allegation of dormancy, when not in connection with a sale and transfer or lease application *or with other facts which compel Commission consideration,* does not state a cause of action before this Commission. (emphasis added).

We decline to reach Airline's argument because even were we to find the above quoted language constitutes a "rule," our holding in this appeal would not be affected due to the existence of "other facts which compel Commission consideration." Allegations and evidence that a certificate was wholly or partially inoperative for approximately twenty-two years, coupled with allegations and evidence that competing carriers expanded their facilities in reliance upon Airline's absence from the market, constitute facts which compel Commission consideration. Airline's second point of error is overruled.

■ In its third and fourth points of error, Airline challenges the sufficiency of the notice it was given.

The complaint filed with the Commission requested cancellation only of the household goods portion of Airline's certificate, whereas the Commission ultimately cancelled the entire permit. Airline claims that neither the complaint nor the notice published by the Commission pursuant to the complaint put Airline on notice that the Commission intended to consider cancellation of the entire permit, thereby depriving Airline of due process of law.

Article 911b, § 12(b) authorizes the Commission to cancel a permit "upon notice to the holder" and "after opportunity is given such holder to be heard." After the complaint was filed, the Commission issued the following public notice:

Notice is hereby given that the Railroad Commission of Texas has instituted a proceeding to consider whether Specialized Motor Carrier Certificate No. 5849, held in the name BARNETT & GARDENHIRE, INC., ... should be cancelled, suspended or amended, or whether any other appropriate enforcement action should be taken, under powers granted to the Commission in Sections 4 and 12 of the Texas Motor Carrier Act, Texas Revised Civil Statutes Annotated, Article 911b.

The above-quoted language is sufficiently broad to give notice to Airline that the entire certificate was subject to review. Furthermore, the hearings examiner twice announced at the initial hearing that the entire certificate was subject to sanctions if infirmities were found, and a second hearing was scheduled for the specific purpose of allowing Airline to present additional evidence regarding those portions of the certificate outside the scope of the complaint. Airline presented no evidence at the second hearing. We conclude Airline was not deprived of due process of law.

Airline also argues the Commission failed to provide notice by registered or certified mail in accordance with Tex.Rev. Civ.Stat.Ann. art. 6252–13a, § 18(c) (Supp. 1987). Because it was not raised in Airline's motion for rehearing before the Commission or in Airline's original petition to the district court, this complaint is waived. *United Savings Association of Texas v. Vandygriff*, 594 S.W.2d 163, 169–70 (Tex. Civ.App.1980, writ ref'd n.r.e.). Airline's third and fourth points of error are overruled.

 In its fifth point of error, Airline contends the trial court erred in denying its motion for trial *de novo*. The Texas Supreme Court specifically considered this question and held that *de novo* review is not mandated by Art. 911b, § 20, and that review is by substantial evidence under Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19. *Texas Industrial Traffic League v. Railroad Commission of Texas*, 683 S.W.2d 368 (Tex.1984). Airline suggests we should "reconsider" the Supreme Court's holding in light of the subsequent reenactment by the legislature of Art. 911b, § 20. The language of § 20, however, was not changed. We find the legislature's reenactment of § 20 without change evidences legislative acquiescence in the Supreme Court's holding that Railroad Commission decisions are to be reviewed upon the basis of the record made before the agency and not by trial *de novo*. *See, Lumbermen's Underwriters v. State Board of Insurance*, 502 S.W.2d 217, 220 (Tex.Civ.App. 1973, writ ref'd n.r.e.). Airline's fifth point of error is overruled.

The judgment of the district court is affirmed.