TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00557-CV






James R. Ray, Appellant



v.



Texas State Board of Public Accountancy, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 95-09251, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING




 

 James R. Ray, appellant, appeals from a district-court judgment affirming an
administrative order revoking his license to practice as a certified public accountant. In the two
issues he raises on appeal, Ray complains that appellee, the Texas State Board of Public
Accountancy, (1) impermissibly delegated its legislative and administrative authority to a private
organization in violation of article III, section 1 of the Texas Constitution; and (2) denied him due
process of law as guaranteed by both article I, section 19 of the Texas Constitution and the 14th
Amendment of the United States Constitution. See Tex. Const. art. III, § 1, art. I, § 19; U.S.
Const. amend. XIV, § 2. We will affirm the district court's judgment.



BACKGROUND

 Ray was a certified public accountant licensed by the Texas State Board of Public
Accountancy (the "State Board"). In 1994, Ray received notice from the State Office of
Administrative Hearings informing him that a hearing had been scheduled to address certain
allegations against him, including charges that Ray had violated several well-established
professional standards with respect to audits he had performed of two insurance companies in
1992. More specifically, the State Board alleged that Ray had issued materially false and
misleading financial statements and had failed to comply with "generally accepted accounting
principles" and "generally accepted accounting standards" in his performance of the audits. Ray
was provided three months notice of the proceedings and was told that the hearing would be
limited in length to two days. The proceedings were conducted accordingly in July 1994. Both
the State Board and Ray presented expert testimony on the issue of whether Ray had violated
generally accepted accounting principles and standards in conducting his audits. On the first day,
the hearing lasted from 10:00 a.m. until approximately 6:00 p.m. On the second day, the hearing
commenced at 10:00 a.m. and did not adjourn until 2:00 a.m. the following morning.

 After considering the arguments and evidence presented by each party, including
expert-witness testimony from both sides regarding Ray's compliance with professional accounting
standards, the Administrative Law Judge ("ALJ") ruled in the State Board's favor and
recommended that Ray's license be revoked. In her proposal for decision, the ALJ found that Ray
failed to adequately document his work papers, obtain sufficient and competent evidence
supporting the information in his audit reports, exercise professional judgment regarding the
validity of the supporting documentation, and detect errors and irregularities in the financial
statements provided to him by the companies. (1) The ALJ concluded that the evidence demonstrated
a significant pattern of failure to exercise due care throughout the audits and that Ray did not
know how to conduct a proper, reliable, or professional audit. After reviewing the ALJ's
proposal for decision and hearing additional oral argument from both parties, the State Board
adopted the ALJ's proposal in all respects and revoked Ray's license.

 Upon the State Board's denial of his motion for rehearing, Ray filed suit in district
court, seeking judicial review of the State Board's action. See Public Accountancy Act, Tex. Rev.
Civ. Stat. Ann. art. 41a-1, § 22 (f) (2), (3) (West Supp. 1999); see also Administrative Procedure
Act, Tex. Gov't Code Ann. § 2001.176 (West Supp. 1999). Ray asserted that the State Board had
exceeded its statutory authority, abused its discretion, and denied him due process of law, and that
its decision was not supported by substantial evidence. After a two-day hearing, the district court
rejected these claims and rendered judgment affirming the State Board's decision to revoke Ray's
license.

 Ray now appeals the district court's judgment, claiming that the State Board
unconstitutionally delegated its powers to the American Institute of Public Accountants (the
"Institute") and denied him procedural due process in the proceedings before the State Office of
Administrative Hearings ("SOAH").


DISCUSSION

Unconstitutional Delegation

 We first address the issue of whether the State Board unconstitutionally delegated
its rulemaking authority to a private organization. Ray contends that section 501.22 of the Texas
Administrative Code is an unconstitutional delegation of legislative and regulatory authority to the
Institute. (2) 22 Tex. Admin. Code § 501.22 (1999); Tex. Const. art. III, § 1. Ray contends that
every point on which the ALJ ruled against him was founded upon violations of the standards
promulgated by the Institute through its Financial Accounting Standards Board (collectively the
"Institute"). The State Board refers to these standards in section 501.22 of the Texas
Administrative Code, which provides:


 A certificate or registration holder shall not permit his name to be
associated with financial statements in such a manner as to imply that he is acting
as an independent public accountant with respect to such financial statements,
unless he has complied with applicable generally accepted auditing standards. 
Statements on auditing standards issued by the American Institute of Certified
Public Accountants, auditing standards included in Standards for Audit of
Governmental Organizations, Programs, Activities and Functions, issued by the
United States General Accounting Office, and in other pronouncements having
similar generally recognized authority, are considered to be interpretations of
generally accepted auditing standards, and departures from such pronouncements,
where they are applicable, must be justified by those who do not follow them. 



22 Tex. Admin. Code § 501.22 (1999) (emphasis added). 

 Ray argues that the State Board's incorporation of these standards in its rule is an
unbridled delegation of legislative and administrative power to the Institute. We disagree and hold
that this is not an unconstitutional delegation of power.

 We addressed a similar argument in Central Power & Light Co. v. Sharp, 919
S.W.2d 485, 492-93 (Tex. App.--Austin 1996), pet. denied per curiam, 960 S.W.2d 617 (Tex.
1997). Central Power involved a statute and agency rule that required corporations to compute
their annual surpluses, assets, and debts according to "generally accepted accounting principles"
for tax purposes. See id. at 492; see also Tex. Tax Code Ann. § 171.109 (b) (West 1992); 34
Tex. Admin. Code § 3.547(d)(1) (1995). The State Comptroller of Public Accounts had
interpreted "generally accepted accounting principles" to mean the broad rules of accounting
formally accepted by the Institute. As in this case, the appellant claimed that the Comptroller's
reliance on the Institute's pronouncements as "generally accepted accounting principles" was an
unconstitutional delegation of legislative power to an unofficial agency. See Central Power, 919
S.W.2d at 492. We disagreed and held that, rather than being a delegation of legislative power
to a private agency, the rules and the Commissioner's interpretation merely incorporated the
Institute's pronouncements as standards to be considered in computing taxes; the Comptroller still
retained all the power delegated by the legislature. See id.

 In rejecting appellant's argument in Central Power, we observed that the Institute
lacks any direct power or authority over Texans. See id. Its pronouncements are effective only
by virtue of legislative action adopting them as accounting standards. We also noted that, in
addition to the Institute's lack of any legislative power, there were numerous protections available
to ensure that its standards would not be unconditionally binding on Texans, such as the
Comptroller's discretion to depart from adherence to those principles when the circumstances
required otherwise or when compliance with the principle would result in a misleading financial
statement. See id. We find the situation here analogous.

 We first note that, as with the administrative rules at issue in Central Power, the
rule at issue here provides that the standards as interpreted by the Institute are to be considered
only in those instances in which the State Board deems them applicable. There is no wholesale
delegation of power. Rather, the standards are adopted and applied at the State Board's discretion
and not in every situation. Furthermore, they are only to be considered by the State Board along
with other factors and are not necessarily dispositive. A review of the standards as interpreted
by the Institute reveals that they are not rigid precepts to be indiscriminately applied. Rather, they
are general principles that by their very nature must be qualified, interpreted, and applied on a
case-by-case basis by the State Board. Even Ray does not dispute the fact that these standards are
subject to more than one interpretation.

 Additionally, these pronouncements are treated only as interpretations of generally
accepted accounting principles, not as the principles themselves. These statements are nothing
new. In essence, they are a restatement of the professional accounting standards and principles
that have become well-established and universally accepted over time; hence comes the term
"generally accepted accounting principles." Therefore, just as we held in Central Power, we
conclude here that the State Board has not ceded any of its disciplinary or regulatory authority to
the Institute. Instead, the State Board has adopted these pronouncements to provide its licensees
notice of the already well-established standards that the State Board may consider when it
exercises its authority. And even then, the standards are used only if the State Board determines
that the standards are applicable in a particular situation.

 Finally, while it is true that the ALJ relied heavily upon the Institute's
interpretations, it is also clear that her decision was based on and supported by ample expert
testimony establishing the underlying generally accepted accounting principles and standards that
Ray had breached. Based on the testimony of the expert witnesses, the ALJ determined,
independently of the Institute's interpretation of generally accepted accounting principles, that
auditors must inspect, investigate, and confirm companies' financial statements; detect errors and
irregularities in those statements; support their findings with adequate evidence; and exercise due
professional care in their audits. She then reasonably concluded from the evidence that Ray had
violated these basic accounting standards and principles in several instances. The evidence
indicated that Ray had overstated the value of certain capital stock investments; consistently failed
to objectively evaluate the balance sheets and other financial statements to determine if they were
accurate; repeatedly failed to investigate glaring errors and inconsistencies found in the statements
supplied to him; and failed as a whole to exercise due professional care.

 In light of the testimony and other evidence presented at the hearing, the ALJ had
more than a sufficient basis to determine that Ray had breached generally accepted accounting
principles and standards. While the ALJ did include the Institute's interpretation of those
principles and standards in her findings of fact and conclusions of law, this does not constitute any
type of unconstitutional delegation by the State Board or SOAH to the Institute. Accordingly, this
issue is overruled.


Due Process

 We next address the issue of whether the administrative hearing was so unfair as
to have denied Ray due process of law as guaranteed by the Texas and United States constitutions. 
See Tex. Const. art. I, § 19; U.S. Const. amend. XIV, § 2. Ray complains that the hearing on
the second day ran for "sixteen continuous hours" and that he was not allowed to present his case
until "late in the evening." This, he claims, resulted in a denial of his due process rights to be
heard and to introduce evidence at a meaningful time and in a meaningful manner.

 We first point out that any perceived error was not properly preserved for our
review. From the first time he was given notice of the proceedings three months in advance, Ray
was aware that only two days had been allotted for the hearings. However, at no time before or
during the proceedings did Ray object or move for a continuance in an attempt to adjourn the
proceedings until a later date. (3) Nor does the record indicate that Ray asserted this error in his
motion for rehearing before the State Board. To preserve error a complaint must be asserted in
the motion for rehearing; otherwise, that issue is waived. See Sears v. Texas State Bd. of Dental
Exam., 759 S.W.2d 748, 750 (Tex. App.--Austin 1988, no writ); United Sav. Ass'n of Tex. v.
Vandygriff, 594 S.W.2d 163, 168-69 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.). Ray failed
to bring his complaint to the attention of the ALJ or State Board by an objection or motion for
continuance, much less in his motion for rehearing. Any error was therefore waived.

 Even if any error had been properly preserved for our review, we nevertheless
would hold that it did not rise to the level of denial of due process. In the area of procedural due
process, the protections afforded under the Texas Constitution are congruent with those in the
federal constitution. See Price v. City of Junction, 711 F.2d 582, 590 (5th Cir. 1983); cf.
University of Tex. Med. Schl. v. Than, 901 S.W.2d 926, 930-31 (Tex. 1995). Due process at a
minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful
manner. See Than, 901 S.W.2d at 930 (Tex. 1995) (citing Mathews v. Eldridge, 424 U.S. 319
(1976)). Texas courts have also defined the minimum as requiring the presence of the "rudiments
of fair play." See State v. Crank, 666 S.W.2d 91, 94 (Tex. 1984), cert. denied, 469 U.S. 833
(1984). As we will explain, the record shows that Ray was provided the requisite notice,
meaningful opportunity to be heard, and the necessary rudiments of fair play.

 We believe the three-month notice that Ray was provided was sufficient notice. 
In addition, the ALJ properly acted within her authority under the Administrative Code and
provided Ray with a sufficient amount of time to confer with counsel, prepare for the hearing, and
apportion his time accordingly. See former 1 Tex. Admin. Code § 155.37(d) (1995), currently
codified at 1 Tex. Admin. Code § 155.49 (1999). Ray also had adequate opportunity to argue his
case, cross-examine the State Board's witnesses, and question his own witnesses on direct
examination.

 Despite these opportunities, the record indicates that Ray's counsel was particularly
inefficient. While the State Board's direct examination was direct and to the point, Ray's cross-examination of those witnesses was lengthy, meandering, and we believe largely responsible for
the delay in the presentation of Ray's case-in-chief. Furthermore, the hearing on the second day
was not continuous as Ray contends. The record indicates that the parties recessed at least six
times throughout the sixteen-hour period.

 Although both the length of the proceedings on the second day and the late
presentation of Ray's case-in-chief were undoubtedly unpleasant and far from ideal, these
conditions were not so egregious as to have denied Ray the requisite notice, meaningful
opportunity to be heard, and the necessary rudiments of fair play. We overrule appellant's last
issue.


CONCLUSION

 Having overruled both of appellant's issues, we affirm the judgment of the district
court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd, and Patterson

Affirmed

Filed: October 21, 1999

Publish
1. According to the ALJ's findings, Ray accepted many of the insurance companies' financial
statements (primarily those involving the value of certain assets) without question, despite blatant
inconsistencies in the figures provided to him. He overstated the value of certain capital stock
investments and failed to verify the value and collectibility of several large receivable accounts,
including one account that represented over forty-four percent of one company's total assets.
2. Ray also contends that sections 501.21, 501.23, and 501.24 impermissibly delegate
legislative authority to private entities. 22 Tex. Admin. Code § 501.21, et seq. (1999). It is clear
from the record, however, that the ALJ's decision was founded on her conclusion that Ray
violated only section 501.22, and not sections 501.21, 501.23, or 501.24. We will therefore limit
our discussion to the validity of section 501.22. 
3. Earlier in the proceedings, Ray moved for a continuance on other grounds, requesting that
the second day of hearings be postponed due to a time conflict. The ALJ granted this motion.



 rehearing; otherwise, that issue is waived. See Sears v. Texas State Bd. of Dental
Exam., 759 S.W.2d 748, 750 (Tex. App.--Austin 1988, no writ); United Sav. Ass'n of Tex. v.
Vandygriff, 594 S.W.2d 163, 168-69 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.). Ray failed
to bring his complaint to the attention of the ALJ or State Board by an objection or motion for
continuance, much less in his motion for rehearing. Any error was therefore waived.

 Even if any error had been properly preserved for our review, we nevertheless
would hold that it did not rise to the level of denial of due process. In the area of procedural due
process, the protections afforded under the Texas Constitution are congruent with those in the
federal constitution. See Price v. City of Junction, 711 F.2d 582, 590 (5th Cir. 1983); cf.
University of Tex. Med. Schl. v. Than, 901 S.W.2d 926, 930-31 (Tex. 1995). Due process at a
minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful
manner. See Than, 901 S.W.2d at 930 (Tex. 1995) (citing Mathews v. Eldridge, 424 U.S. 319
(1976)). Texas courts have also defined the minimum as requiring the presence of the "rudiments
of fair play." See State v. Crank, 666 S.W.2d 91, 94 (Tex. 1984), cert. denied, 469 U.S. 833
(1984). As we will explain, the record shows that Ray was provided the requisite notice,
meaningful opportunity to be heard, and the necessary rudiments of fair play.

 We believe the three-month notice that Ray was provided was sufficient notice. 
In addition, the ALJ properly acted within her authority under the Administrative Code and
provided Ray with a sufficient amount of time to confer with counsel, prepare for the hearing, and
apportion his time accordingly. See former 1 Tex. Admin. Code § 155.37(d) (1995), currently
codified at 1 Tex. Admin. Code § 155.49 (1999). Ray also had adequate opportunity to argue his
case, cross-examine the State Board's witnesses, and question his own witnesses on direct
examination.

 Despite these opportunities, the record indicates that Ray's counsel was particularly
inefficient. While the State Board's direct examination was direct and to the point, Ray's cross-examination of those witnesses was lengthy, meandering, and we believe largely responsible for
the delay in the presentation of Ray's case-in-chief. Furthermore, the hearing on the second day
was not continuous as Ray contends. The record indicates that the parties recessed at least six
times throughout the sixteen-hour period.

 Although both the length of the proceedings on the second day and the late
presentation of Ray's case-in-chief were undoubtedly unpleasant and far from ideal, these
conditions were not so egregious as to have denied Ray the requisite notice, meaningful
opportunity to be heard, and the necessary rudiments of fair play. We overrule appellant's last
issue.


CONCLUSION

 Having overruled both of appellant's issues, we affirm the judgment of the district
court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd, and Patterson

Affirmed

Filed: October 21, 1999

Publish
1. According to the ALJ's findings, Ray accepted many of the insurance companies' financial
statements (primarily those involving the value of certain assets) without question, despite blatant
inconsistencies in the figures provided to him. He overstated the value of certain capital stock
investments and failed to verify the value and collectibility