John Ed PRICE, et al.,
Plaintiffs-Appellants,

v.

CITY OF JUNCTION, TEXAS,
Defendant-Appellee.

No. 83–1097.

United States Court of Appeals,
Fifth Circuit.

June 20, 1983.

Bradley C. Miles, San Angelo, Tex., for plaintiffs-appellants.

Graves, Dougherty, Hearon & Moody, David H. Donaldson, Jr., Austin, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GOLD-BERG and POLITZ, Circuit Judges.

CLARK, Chief Judge:

Six residents of Junction, Texas sued the city seeking a declaration that Junction's "junk car" ordinance was unconstitutional. The owners of cars subject to the ordinance also brought a section 1983 action against named city officials. After a number of pretrial stipulations and the dismissal of the section 1983 claim and the named defendants, the suit came before the district judge as a declaratory judgment action with the city as the sole defendant. The plaintiffs sought a declaration that the ordinance was an improper exercise of the city's police power; violated the plaintiffs' procedural due process rights; deprived them of equal protection of the laws; subjected their property to taking without just compensation, and subjected them to warrantless searches and seizures. The district court rejected all of the constitutional claims and upheld the statute. We affirm.

The city of Junction, Texas, responding to what it characterized as "a long history of concern by [its] citizens ... about the junked, wrecked and abandoned vehicles that littered the city," began the process in May, 1979 of implementing a "junk car ordinance." The ordinance which was adopted [1] allowed the city to order the re-

---

1. The text of the amended ordinance challenged in this case reads:

SECTION I. DEFINITIONS.

Whenever the following terms are used in this article they shall have the meaning respectively ascribed to them in this section:

JUNKED VEHICLE. Means any motor vehicle as defined in Section 1 of Article 6701d–11, Vernon's Texas Civil Statutes, as amended, which:

(a) is inoperative and which does not have lawfully affixed thereto both an unexpired license plate or plates and a valid motor vehicle safety inspection certificate and which is wrecked; dismantled; partially dismantled; or discarded; or

(b) remains inoperable for a continuous period of more than 120 days.

SECTION 2. LOCATION OR PRESENCE OF JUNKED VEHICLES WITHIN CITY DEEMED PUBLIC NUISANCE; EXCEPTIONS.

The location or presence of any junked vehicle or junked vehicles on any lot, tract, parcel of land or portion thereof, occupied or unoccupied, improved or unimproved, within the City of Junction shall be deemed a public nuisance and it shall be unlawful for any person or persons to cause or maintain such public nuisance by wrecking, dismantling, rendering inoperable, abandoning or discarding his or their vehicle or vehicles on the property of another or to suffer, permit or allow the same to be placed, located, maintained or exist upon his or their own real property; provided that this section shall not apply to (1) a vehicle or part thereof which is completely enclosed within a building in a lawful manner where it is not visible from the street or other public or private property; (2) a vehicle or part thereof which is stored or parked in a lawful manner on private property in connection with the business of a licensed vehicle dealer or a junkyard; or (3) unlicensed inoperable vehicles stored on private property provided, however, that the vehicles and outdoor storage areas are maintained in such a manner that they do not constitute a health hazard and are screened from ordinary public view by means of a fence, rapidly grow-

moval or to actually remove junked vehicles from public or private property.[2] A junked vehicle was defined as any inoperative motor vehicle which has both expired license

ing trees, shrubbery, or other appropriate means.

SECTION 3. ABATEMENT OR REMOVAL ORDER: CONTENTS: SERVICE.

(a) Whenever such public nuisance exists in the city in violation hereof, the Chief of Police and/or his employees, who shall administer this ordinance, shall not give less than ten (10) days notice to the owner of the real property of the occupant, if any, of the premises whereon such public nuisance exists to abate or remove the same, stating the nature of the public nuisance of private property and that it must be removed and abated within ten (10) days and further that a request for a hearing must be made before expiration of said ten (10) day period by the aggrieved person, such notice to be mailed, by certified or registered mail with a 5-day return receipt requested, to the owner or the occupant of the private premises whereupon such public nuisance exists. If the notice is returned undelivered by the United States Post Office, official action to abate said nuisance shall be continued to a date not less than ten (10) days from the date of such return.

(b) Whenever such public nuisance exists in the city in violation hereof, the Chief of Police and/or his employees, shall give not less than a ten (10) day notice, stating the nature of the public nuisance on the public property or on a public right-of-way and that it must be removed and abated within ten (10) days and further that a request for a hearing must be made before expiration of said ten (10) day period, such notice to be mailed, by certified or registered mail with a 5-day return receipt requested, to the owner or the occupant of the public premises or to the owner or the occupant of the premises adjacent to the public right-of-way whereupon such public nuisance exists. If the notice is returned undelivered by the United States Post office, official action to abate said nuisance shall be continued to a date not less than ten (10) days from the date of such return.

(c) After a vehicle has been removed it shall not be reconstructed or made operable.

(d) A public hearing prior to the removal of the vehicle or part thereof as a public nuisance is to be held before the governing body of the City, or official of the City as designated by the governing body, when such a hearing is requested by the owner or occupant of the public or private premises or by the owner or occupant of the premises adjacent to the public right-of-way on which said vehicle is located, within ten (10) days after service of notice to abate the nuisance. Any resolution or order requiring the removal of a vehicle or part thereof shall include a description of the vehicle, and the correct identification number and license number of the vehicle, if available at the site.

SECTION 4. REMOVAL WITH PERMISSION OF OWNER OR OCCUPANT

If within ten (10) days after receipt of notice from the Chief of Police and/or his employees, or his duly authorized agent, to abate the nuisance, as herein provided, the owner or occupant of the premises shall give his written permission the Chief of Police and/or his employees, or his duly authorized agent for removal of the junked motor vehicle from the premises, the giving of such permission shall be considered compliance with the provisions of Section 3.

SECTION 5. DISPOSAL OF JUNKED VEHICLES.

(a) If such public nuisance is not abated by said owner or occupant after notice is given in accordance with this ordinance, official action shall be taken by the City of Junction to abate such nuisance. Junked vehicles or parts thereof may be disposed of by removal to a scrapyard, demolishers, or any suitable site operated by the City of Junction for processing as scrap or salvage, which removal or process shall be considered with Section 5, Subdivision (b) of this ordinance. A junked vehicle disposed of to a demolisher, in accordance with this ordinance, must be transferred to such demolisher by a form acceptable to the Texas Department of Highways and Mass Transportation (Form # MVD 71–5).

. . . . .

SECTION 6. AUTHORITY TO ENFORCE.

The Chief of Police and/or his employees, or his agent, may enter upon private property for the purposes specified in this ordinance to examine vehicles or parts thereof, obtain information as to the identity of vehicles and to remove or cause the removal of a vehicle or parts thereof declared to be a nuisance pursuant to this ordinance. The Municipal Court of the City of Junction shall have authority to issue all orders necessary to enforce such ordinance.

SECTION 7. APPLICATION.

Nothing in this Article shall effect ordinances that permit immediate removal of a vehicle left on public property which constitutes an obstruction to traffic.

SECTION 8. PENALTY.

Upon conviction for violation of any provisions of this article relating to the maintaining of a public nuisance as described herein or in permitting or allowing such public nuisance to exist, such violator shall be punished by a fine of not exceeding two hundred dollars ($200.00) and each day that such nuisance shall continue after the time for abatement as herein set out shall constitute a separate offense.

2. The city acted pursuant to state law. The state granted cities, towns and counties the authority to enact procedures for the abate-

plates and an invalid motor vehicle safety inspection certificate. The vehicle must be wrecked, dismantled, partially dismantled or discarded or it must remain inoperable for more than 120 days.

The presence of a junked vehicle anywhere in the city constitutes a public nuisance. Exceptions to this were made for: (1) vehicles completely enclosed in buildings where not visible from public or private property; (2) vehicles on private property in connection with the operation of a vehicle dealer or junkyard; and (3) unlicensed antique or "special interest" vehicles stored by a collector on his property and screened from public view by a fence, trees or shrubbery. The ordinance provides for notice to the owner and a public hearing before the city council or its designee before the vehicle may be seized.

The council amended the ordinance on May 12, 1980 to broaden the third exception to include all inoperable, unlicensed vehicles. The council then directed the new city attorney, Donnie J. Coleman, to enforce the ordinance. Ms. Coleman prepared a letter that was to be sent to all persons who were considered to be in violation of the ordinance as amended. Her letter ran in the Junction newspaper on Thursday, May 15, 1980. She waited approximately two weeks for voluntary compliance. During this period, she had the local police investigate reports of junked cars and conduct a survey of junked vehicles.

On May 28, 1980, Ms. Coleman sent out the same letter to sixteen people, including all of the people who later became plaintiffs. After receiving their letters, plaintiffs John Ed Price, Arthur D. Wallace, and C.W. Schaefer came into her office and obtained a copy of the ordinance. Ms. Coleman sent out four more groups of letters during June.

On June 2, ten persons, including all of the plaintiffs, requested a hearing before the council. Several of the plaintiffs appeared June 9 at the city council meeting which was attended by sixty to seventy people who supported the ordinance. The council decided to hold a special hearing on June 16. That announcement was made at the meeting and by a form letter mailed to all those who had requested a hearing.

At the hearing, police officer Freddy Gazaway testified that the plaintiffs (and others) were violating the ordinance. The owners did not cross-examine Gazaway. During the hearing, Ms. Coleman explained that the police would need either the owner's permission or a search warrant to examine a vehicle on private property.

The council, on June 23, agreed that nine of the ten owners were violating the ordinance and ordered Ms. Coleman to proceed with enforcement. The next day, Ms. Coleman mailed a letter to these persons notifying them that the council had made a preliminary finding that they were not in compliance with the junked car ordinance. As criminal prosecution began, the car owners filed their suit. Since the filing of this appeal, city officials proceeded with the impounding procedure and have enforced the ordinance against these plaintiffs.

## POLICE POWER

The plaintiffs contend that the "junk car" ordinance might be a valid zoning ordinance, but that it cannot be a legitimate exercise of the city's general police powers because it is an unconstitutional restriction upon the plaintiffs' use of private property which serves no valid public interest. The plaintiffs' brief fails to make clear whether they raise this claim under the federal or state constitutions. Because the plaintiffs cite only Texas cases in this section of their brief, we assume that they are attacking the statute on state constitutional grounds.[3]

___

ment and removal of junked vehicles as public nuisances from private and public property, including public rights-of-way. Tex.Rev.Civ. Stat.Ann. art. 6687–9, *now codified at*, Tex. Health Code Ann. art. 4477–9a § 5.01 *et seq.*

**3.** The district court addressed the issue under both federal and state constitutional law.

The plaintiffs argue that the statute is invalid under *Spann v. Dallas,* 111 Tex. 350, 235 S.W. 513 (1921). *Spann* held that:

Since the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare. A law which assumes to be a police regulation but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort or welfare, when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages.

235 S.W. at 515. *Spann* was decided, however, prior to the landmark Supreme Court holding in *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), and the 1927 passage of legislation by the Texas legislature giving cities the power to enact zoning laws.

■ Subsequent Texas cases also distinguish *Spann.* In *City of Brookside Village v. Comeau,* 633 S.W.2d 790 (Tex.), *cert. denied,* —— U.S. ——, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982), the Texas Supreme Court upheld the village's ordinance regulating the location of mobile homes. The case is applicable here because while the Court found that the ordinance had the effect of a zoning ordinance, *id.* at 793, it considered the law as a land-use ordinance passed pursuant to the village's police powers. *Id.* at 793 n. 4. The Court directs us in reviewing the police powers of municipalities under the Texas Constitution to presume the ordinance is valid. *Id.* at 792. We may not interfere unless the ordinance is "unreasonable and arbitrary—a clear abuse of municipal discretion." *Id.* (quoting *Hunt v. City of San Antonio,* 462 S.W.2d 536, 539 (Tex.1971)). This places an "extraordinary burden" on the party attacking the ordinance to show that "no conclusive or even controversial or issuable fact or condition existed" which would authorize the passage of the ordinance. *Id.* at 792–93 (quoting *Thompson v. City of Palestine,* 510 S.W.2d 579 (Tex.1974)). If reasonable minds may differ as to whether a particular ordinance has a substantial relationship to the protection of the general health, safety or welfare of the public, then there exists an issuable fact and the ordinance must stand. *Id.* at 793. *See also City of Houston v. Johnny Frank's Auto Parts Co.,* 480 S.W.2d 774 (Tex.Civ.App.— Houston 1972, writ ref'd).[4]

■ The stipulated record in this case indicates that the city was concerned about junk cars being a fire hazard and a hinderance in the fighting of fires; an attractive nuisance to children; an obstacle in the luring of professional persons to locate in a city known as "Junky Junction"; a liability in encouraging tourist trade; and an eyesore. While *Spann* does say that purely aesthetic considerations are not a proper basis for the exercise of police powers, later cases indicate that aesthetics should not be

4. In *Johnny Frank's Auto Parts,* the Court of Civil Appeals upheld the constitutionality of a city ordinance that required that oil, gasoline and other flammable liquids be drained from wrecked vehicles in wrecking yards. The ordinance also required that wrecking yards be surrounded by solid fences or walls.

The question remains whether the ordinance here involved was such an unreasonable exercise of police power as to be invalid. Even though an ordinance is passed to accomplish a purpose properly within the scope of a city's police power, it must not be wholly unreasonable nor unduly oppressive in its operation upon those affected by it. It must be reasonably necessary for the preservation of health, safety and welfare. 40 Tex.Jur.2d Municipal Corporations, sec. 327 (1962). However, when the validity of an ordinance is attacked on this basis there is a presumption of validity and the attacker, to prevail, must clearly show that it is arbitrary, unreasonable and an abuse of the police power. *City of Weslaco v. Meltor,* 158 Tex. 61, 308 S.W.2d 18 (1957). The question of its reasonableness is a question of law, not of fact. *City of Coleman v. Rhone,* 222 S.W.2d 646 (Tex.Civ.App.—Eastland 1949, writ ref'd).

480 S.W.2d at 779.

ignored, but may properly be considered by a city as one of a number of factors followed in the exercise of police powers. *City of Houston v. Johnny Frank's Auto Parts Co.,* 480 S.W.2d at 780; *Connor v. City of University Park,* 142 S.W.2d 706, 712 (Tex. Civ.App.—Dallas 1940, writ ref'd).

We presume this ordinance to be valid. The plaintiffs then must, under their "extraordinary burden," show us that there are no facts or conditions which would authorize the passage of the ordinance. They have failed to do that. The city on the other hand has shown that the ordinance not only furthers an aesthetic goal, but also serves the interests of the health, safety and welfare of the residents of Junction. We find the ordinance, therefore, to be a proper exercise of the city's police powers.

Finally, the plaintiffs argue that the ordinance establishes junked cars as a "nuisance *per se*" in violation of Texas law. We need only reply that the Texas legislature has determined junk cars to be a public nuisance punishable under state law. Tex. Health Code Ann. art. 4477–9a, § 5.08(a)–(c).

## PROCEDURAL DUE PROCESS

The plaintiffs also complain that the ordinance deprives them of their procedural due process rights under both the federal and state constitutions because they are denied a meaningful hearing before an impartial tribunal.[5]

The ordinance provides in section 3(d) that when the city believes that a vehicle is being maintained in violation of the ordinance, the owner shall receive ten days' notice to abate the violation or remove the vehicle. The owner also has ten days within which to request a hearing. Section 3(d) requires that, when requested, a public hearing must be held before the city council or a designated city official to determine if there is a violation. In this case, each of the plaintiffs received notice that they were maintaining vehicles in violation of the ordinance. Each requested a hearing, and a hearing was held at which the city presented evidence that they were in violation of the ordinance. The plaintiffs offered no defenses.

The central theme of procedural due process under the federal constitution is that parties whose liberty or property rights are affected by governmental action are entitled to notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976). It is necessary that property or liberty interests within the meaning of the due process clause be involved before the notice and hearing rights are created. Whether a junk car has little or great value, it is constitutionally protected property. The plaintiffs here clearly have a property interest within the contemplation of the due process clause.

The timing and nature of the hearing, therefore, is determined by an accommodation of the competing interests which include the importance of the private interest, the finality of the deprivation, the likelihood of government error and the magnitude of government interests. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). The ordinance deals with the seizure (or re-arranging) of private property. If the prop-

5. The plaintiffs also argue that they are denied a hearing before an impartial "judicial" tribunal, that the ordinance violates the separation of powers, and that it shifts the burden of proof to the private landowner. These contentions border on the frivolous. There is no requirement that the impartial tribunal be a judicial tribunal. Moreover, in this case, after a hearing before the city council, the city must go to municipal court to enforce its findings thus implicitly granting the judicial hearing the residents say they are due. Additionally, there is no plausible separation of powers issue. To so rule would call into question the entire system of agency regulatory authority which resides in the executive level of government. Finally, there is no shift in the burden of proof. Before the city council and the municipal court, the city officials bear the burden of proving that the vehicles are inoperable and unlicensed, thus falling within the ordinance. The residents then may show that the vehicles in fact are operable.

erty is seized, the deprivation would be final. There is some chance of government error given the fact that old damaged cars may still be operable. On the other hand, while the government interest is enough to justify the ordinance, it is certainly not enough to warrant seizure prior to hearing. There is a right, therefore, to notice and hearing before governmental action is taken under this statute.

■ We hold that the notice and hearing provided by this ordinance is constitutionally sufficient. The ordinance gives ten days' notice of the pending action. Ten days is certainly enough time to clear the junk vehicles, cover them from view or secure license plates. It is also time enough to prepare for the hearing. Moreover, there are indications in this case that the council is willing to postpone the hearing if notice proves insufficient.

The plaintiffs complain, though, that the hearing is not impartial because it may be before the same group that passed the ordinance. We will not presume that the publicly elected council members would not act impartially in such a hearing. In the setting of teacher disciplinary hearings arising from a strike, the Supreme Court refused to hold that a school board would act unfairly. *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1982). The Court required a showing of actual unfairness or partiality, such as some personal or financial stake amounting to a conflict of interest, to justify the disqualification of the board. 426 U.S. at 491–93, 96 S.Ct. at 2313–14. There is no showing here of any actual unfairness or partiality.

■ The analysis under the state constitution merits the same result. The Texas constitution provides that "[n]o citizen of this State shall be deprived of ... property ... except by due course of the law of the land." Tex. Const. art. I, § 19. This provision encompasses not only procedural, but also substantive due process. *Aladdin's Castle, Inc. v. City of Mesquite,* 701 F.2d 524, 531 (5th Cir.1983). It is clear that the protection afforded under the pro-

cedural due process rights granted by article I, section 19, are congruent with those in the Federal Constitution.

The Federal Constitution, in the fifth and fourteenth amendments, also provides against deprivation of life, liberty or property without due processes of law, the fourteenth amendment by its language being applicable to prevent the states from carrying out such a deprivation. It has been held by Texas courts that the clause of the Texas Constitution, to the extent that it is identical with the fourteenth amendment, has placed upon the powers of the state legislature the same restrictions as those which have been held to be imposed by the language of that amendment of the Federal Constitution. *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249 (1887).

Tex. Const. Ann. art. 1, § 19 (Vernon 1955) (Interpretive Commentary) at 448–49. The procedural due process rights vouched safe by the Texas constitution to persons being deprived of property requires reasonable notice and meaningful opportunity to be heard. *Id.* at 447; *In re B— M— N—,* 570 S.W.2d 493, 502 (Tex.Civ.App.—Texarkana 1978). The same analysis is therefore required and the ordinance is constitutional under state law.

## EQUAL PROTECTION

The plaintiffs' next argument is that the ordinance violates the equal protection clause of the federal constitution because it makes an irrational classification in exempting from the ordinance junk car dealers, persons who can afford to hide their vehicles from public view, and persons who can get an extension period. In addition, they argue that the ordinance does not limit the discretion of local officials thus engendering the possibility of arbitrary and discriminatory enforcement.

■ Equal protection claims, when not involving fundamental rights and suspect classes, are analyzed under the mere rationality test. *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 150 (5th Cir.

1981). This test requires that the ordinance promote a legitimate governmental interest. *Id.* We have already found such an interest. In addition, the burden is upon the challenger to show the restriction is wholly arbitrary. *Id.* The plaintiffs have failed to show this.[6]

The uniform grant of such extension periods does not create an equal protection violation. It appears that all who requested an extension were given one, apparently as an accommodation during the initiation period of the new ordinance.

Finally, the plaintiffs' claim about the possibility of arbitrary enforcement is properly raised in a void-for-vagueness claim. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). The plaintiffs conceded during trial that the ordinance is not vague. The issue therefore must be resolved against them.

### TAKING WITHOUT JUST COMPENSATION

The plaintiffs contend that the ordinance requires them to spend money to make their cars operative, screen them or license them. This they contend is confiscatory, therefore, it amounts to a taking of property without just compensation in violation of the federal and state constitutions. The plaintiffs also contend that if this is not a physical taking, it places a restriction or servitude upon private property without compensation in violation of Texas law.

Under federal law, whether a state law infringes property in violation of the takings clause of the fifth amendment requires examination of whether the restriction forces some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). But

the Court has acknowledged that this presents a question which is not susceptible to solution by a set formula and which invariably must be solved upon the particular circumstances in each case. *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). We look for guidance to other decisions of the Court. It is clear that "not every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense." *Armstrong,* 80 S.Ct. at 1568. When analyzing a governmental action to determine if a taking has occurred, we are directed to inquire into "the character of the governmental action, its economic impact and its interference with reasonable investment-backed expectations." *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 2042, 64 L.Ed.2d 741 (1980) (quoting *Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979)).

The burden in such cases is upon the plaintiff to show that the ordinance attacked is confiscatory, inordinately burdensome or denies him an economically viable use of his property. *National Western Life Insurance v. Commodore Cove,* 678 F.2d 24, 29 (5th Cir.1982). The plaintiffs here have failed to carry this burden. The ordinance was enacted to further health, safety and aesthetic ends and therefore furthers a significant and proper governmental interest. The ordinance also requires the plaintiffs to license or hide their inoperable junk vehicles if they do not want them to be seized. By their very nature such inoperable junk vehicles do not embody reasonable, investment-backed expectations. The economic impact on the plaintiffs is insufficient to render the ordinance improper under the takings clause.

---

**6.** The plaintiffs appear to be suggesting that the ordinance discriminates against the poor. The ordinance, however, does not make any such distinction. It is to be applied regardless of wealth. Even were we to determine that the ordinance singled out the poor for different treatment, it would not trigger the higher standard of review—strict scrutiny—under the equal protection clause since the Supreme Court has refused to find the poor to be a suspect class. *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 1291, 1294, 36 L.Ed.2d 16 (1973).

The analysis under the state constitution reaches the same conclusion. The plaintiffs argue that the ordinance amounts to either a physical taking of or a restriction or servitude upon private property and, therefore, compensation must be paid. For this proposition they cite *City of Austin v. Teague*, 570 S.W.2d 389 (Tex.1978); *DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965); and *Southern National Bank of Houston v. Austin*, 582 S.W.2d 229 (Tex.Civ.App.—Tyler 1979). The *Teague* and *DuPuy* cases are instructive. The Texas Supreme Court in *Teague* discusses at some length the near imponderable distinction between the exercise of police power and eminent domain. The Court in that case contends there is no one sentence test to allay the problem, but finds in that case that a city's denial of a permit application for an owner's use of property imposed a compensable servitude upon the property. The servitude resulted because the governmental action "singled out plaintiffs to bear all of the cost for the community benefit without distributing any cost among the members of the community." 570 S.W.2d at 394. In *DuPuy*, the Court held that the government's correction of something that is a detriment to the public indicates that the action is a regulation and not a taking and therefore compensation should not be allowed. 396 S.W.2d at 107 n. 3.

Despite the Texas court's position that mere categorization of cases as police power or eminent domain cases is not dispositive, we have already determined that the ordinance here is a proper exercise of the city's police power. Other Texas cases tell us that a reasonable exercise of the police power does not effect a taking. *City of Waco v. Archenhold Automobile Supply Co.*, 386 S.W.2d 174, 179 (Tex.Civ.App.—Waco 1964), *aff'd*, 396 S.W.2d 111 (Tex. 1965). Even under the rationale of *Teague* and *DuPuy*, though, we find that compensation is not required here. The ordinance is more a regulation than a taking. There is benefit to the general public and the burden is not borne by these plaintiffs alone, but by all Junction residents who would keep junked automobiles. This action does not constitute a taking for which compensation is required.

## WARRANTLESS ENTRY

The plaintiffs argue that the ordinance allows the police to enter upon private property to examine or remove vehicles without first obtaining a search warrant. This violates their fourth amendment protection against unreasonable searches and seizures.

We agree with the district court's interpretation that the ordinance does not authorize warrantless searches. Section six of the ordinance provides that law enforcement officials may enter upon private property to enforce the ordinance. It further states however that the municipal court of Junction shall have the authority to issue all orders necessary for this purpose. This requires warrants prior to entry upon private property. Since the ordinance does not explicitly authorize warrantless entry, we must read it, and local officials must enforce it, consistent with the Constitution. If entries occur which appear to violate the Constitution, the entries must be reviewed on a case-by-case basis since the ordinance is not invalid on its face.

The decision of the district court is

AFFIRMED.