Lenora GEORGE

v.

**Jerome BOURGEOIS, individually and in his official capacity as Superintendent of the West Orange Cove Consolidated Independent School District, and West Orange Cove Consolidated Independent School District.**

Civ. No. 1:93–CV–383.

United States District Court,
E.D. Texas,
Beaumont Division.

June 1, 1994.

**1344**

Laurence W. Watts, David G. Lazarz, Watts and Associates, Houston, TX, for plaintiff.

Betsy Hall Bender, Austin, TX, for defendants.

### MEMORANDUM AND ORDER

JOE J. FISHER, Senior District Judge.

The plaintiff's lawsuit raises issues of public employment, procedural due process and retaliation for expressive activity. The defendants' motion for summary judgment, however, raises a more germane and preliminary question: are there disputed issues of material fact which require this case to be tried on the merits? The court concludes there are not and, accordingly, grants summary judgment for the defendants.

### FACTS

The plaintiff, Lenora George ("George"), is employed by the West Orange Cove Consolidated Independent School District ("West Orange Cove"), one of the defendants in this action. The other defendant, Dr. Jerome Bourgeois ("Dr. Bourgeois"), was the Superintendent of West Orange Cove from 1988 to 1990. When Dr. Bourgeois began as Superintendent, George was the principal of West Orange Cove Middle School, operating under a two year contract for the 1988–89 and 1989–90 school years.

On February 5, 1990, Dr. Bourgeois met with George and inquired about her plans for the future. George said she was considering "retirement as an option, since [her] husband's work ... required [him] to spend long periods of time in Florida." The parties sharply disagree over how much import this statement carried. George contends it was merely a casual remark and that her retirement plans were highly uncertain. One month earlier, George had asked a colleague how she could get in touch with the Teacher's Retirement System because she wanted "to check into [her] options for retirement." She eventually met with the Teacher's Retirement System on February 22, 1990, and received an "Estimate of Benefits."

On February 27, 1990, the West Orange Cove Board of Trustees ("the Board") met in regular session. Among the items on the agenda was the renewal of several term contracts, including George's. Dr. Bourgeois was responsible for recommending whether to renew teacher contracts. He recommended renewing George's contract for only one year, although George's expiring contract had been for two years. George claims she was the only administrator recommended for a one-year contract and that all others were recommended for two-year contracts. Dr. Bourgeois stated that his recommendation was based solely on the possibility of George's retirement. Although it was not bound to do so, the Board accepted Dr. Bourgeois' recommendation and renewed George's contract for one year.

When George discovered her contract had been renewed for only one year, she filed a grievance with the Texas State Teachers Association ("TSTA"). George claimed the one year renewal was based on "unsubstantiated complaints from the community and members of the Board of Trustees." She demanded that Dr. Bourgeois reveal the source of these complaints and insisted she be given a two year contract. Dr. Bourgeois responded by stating that he had revealed all known complaints to George. He maintained that his recommendation was based solely on George's uncertain retirement plans. Dr. Bourgeois refused to recommend a two year contract to the Board.

On March 17, 1990, George filed a second grievance with TSTA. This time she complained that Dr. Bourgeois had threatened to reassign her to a counselor's position in retaliation for filing the first grievance. She demanded that Dr. Bourgeois refrain from taking any action to reassign her and that he desist from any future reprisals. Dr. Bourgeois responded by denying George's accusations and assured George that she could continue as principal of the West Orange Cove Middle School for as long as she wished to remain there.

Several days later, on March 22, 1990, the Board again met in regular session. George requested an opportunity to address the Board concerning the renewal of her contract but claims she was denied the opportunity. The defendants disagree. They claimed George was given the opportunity to address the Board during the meeting.

On September 11, 1990, the Board met again and unanimously agreed to extend George's contract through the 1991–92 school year. George thus received the two year contract she had demanded in her initial grievance. Nevertheless, she filed a third grievance with TSTA. George complained, *inter alia*, that she had been excluded from the March 22 Board meeting and had not been given an opportunity to address the Board about her contract. West Orange Cove denied the allegations.

At the beginning of the 1991–92 school year, George was transferred from her position as principal to West Orange Cove's Education Center ("Education Center"). George was named to two separate positions: Director of Federal Programs and Administrator of the Education Center. West Orange Cove maintains that George was selected on the basis of her qualifications and experience. Some time later, she was asked to choose between the two positions because, according to the new Superintendent, Dr. Glen Neswick, it was more than one person could handle. George chose to become Administrator of the Education Center. She stated that she was "the only one in this district who has the ability, philosophy, and personality that can make this program successful." George has continued to serve as Administrator of the Education Center ever since.

In March, 1991, George filed suit against Dr. Bourgeois and West Orange Cove in a Texas state district court. She alleged that the defendants' actions had caused her to suffer mental anguish and had "diminished ... her professional reputation." The case apparently lay dormant for some time. George then amended her state court petition to assert causes of action under federal law, and the defendants removed the case to federal court. This matter is now before the court on the defendants' motion for summary judgment.

## SUMMARY JUDGMENT IN THE FEDERAL COURTS

█ In the federal courts, a party is entitled to summary judgment if it can demonstrate there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The purpose of a summary judgment motion is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (citing Advisory Committee Note to 1963 Amendment of Fed.R.Civ.P. 56(e), 28 U.S.C.App., p. 626). Summary judgment is not a "disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination

of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

■ The standard for granting a summary judgment motion mirrors the standard for granting a directed verdict under Rule 50(a). *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, summary judgment should be granted when the evidence would require a directed verdict for the movant. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511. The only difference between the two motions is the procedural stage at which they are made and the evidence on which they are based. 477 U.S. at 251, 106 S.Ct. at 2511 (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944)). "In essence ... the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. at 251, 106 S.Ct. at 2511.

■ As stated above, the moving party must demonstrate there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The showing required of the movant depends on whether that party bears the burden of proof on the issue at trial. If the movant bears the burden of proof at trial, it must come forward with evidence which establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). If, on the other hand, the movant does not bear the burden of proof of trial, the moving party may meet its burden by showing the absence of evidence to support the nonmovant's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir.1989).

■ Once the moving party has made the requisite showing, the burden shifts to the nonmovant to show that summary judg-

ment should not be granted. *Matter of Gleasman,* 933 F.2d 1277, 1281 (5th Cir. 1991). The nonmovant cannot rests on the pleadings alone; it must come forward with supporting affidavits, depositions, interrogatories or admissions. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmovant must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of the nonmovant's case. *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869, 872 (5th Cir.1991). This is necessary because the motion for summary judgment requires the court to go beyond the pleadings and to assess the proof to determine whether a genuine fact issue exist which necessitates a trial on the merits.[1] *Castillo v. Bowles,* 687 F.Supp. 277, 280 (N.D.Tex.1988). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1355.

### DISCUSSION

At the outset, the court notes that the plaintiff's amended state court petition fails to state the exact causes of action she is pursuing with precision and specificity. From the pleadings, motions and memorandums on file, it appears the plaintiff is asserting claims for retaliation, violations of due process, mental anguish and exemplary damages. Taken as a whole, George's pleadings allege the following:

1. Dr. Bourgeois and West Orange Cove retaliated against George by (a) refusing to renew her contract and/or (b) by forcing her out of her job as principal. This retaliation was prompted by, *inter alia,* George's comments and criticisms of Dr. Bourgeois, which is expressive activity protected by both the United States and Texas Constitutions.

---

1. As a general rule, the court should not usurp the functions of the jury on a motion for summary judgment. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. However, in cases tried to the bench, such as this one, the court has somewhat more discretion to weigh the evidence and draw the necessary inferences, unless those inferences involve witness credibility or disputed material facts. *See Matter of Placid Oil Co.,* 932 F.2d 394 (5th Cir.1991).

2. West Orange Cove retaliated against George by (a) refusing to renew her contract and/or (b) by forcing her out of her job as principal. This retaliation began when George disciplined the daughter of a Board member.

3. Dr. Bourgeois and West Orange Cove took these actions either (a) in bad faith in that they knew or should have known their conduct was proscribed or, alternatively, (b) without any personal culpability.

4. The defendants violated George's due process rights by (a) failing to renew her contract for two years, (b) violating her liberty interest, and (c) failing to afford her substantive due process.

5. The retaliation and violation of George's due process rights proximately caused her to suffer mental anguish.

6. The defendants' knew their conduct was proscribed, and their intentional disregard for George's rights entitles her to exemplary damages.

The court will take each of these arguments up in turn.

### The Plaintiff's Claims of Retaliation for Exercising Her Rights of Free Expression

The linchpin of the plaintiff's action rests on her assertion that the defendants retaliated against her because she criticized Dr. Bourgeois for his handling of school affairs. According to the plaintiff, Dr. Bourgeois reacted to these criticisms by methodically planning to remove George from her position as principal. To accomplish this, Dr. Bourgeois created a "paper trail" of falsified documents and reports of conversations and meetings with George.

Apparently, Dr. Bourgeois was going to use these falsified documents to justify terminating George's employment with the school district. One of these "falsified" reports was Dr. Bourgeois' February, 1990, evaluation of George where, according to the

plaintiff, Dr. Bourgeois "seized upon" a "casual comment" about her retirement and used this as a basis for the "non-renewal" of her contract.

The plaintiff also alleges a parallel but independent plot on the part of West Orange Cove to terminate her employment. According to the plaintiff, this plot began when she disciplined the daughter of a school board member. This led to the "stirring of opposition" within West Orange Cove against her continued role as principal of the middle school.[2] As inferred from the plaintiff's state court petition, this plot was entirely separate from Dr. Bourgeois' although both defendants had the same result in mind—terminating her employment. In sum, according to the plaintiff, both Dr. Bourgeois and West Orange Cove were out to get her. Even after Dr. Bourgeois resigned as Superintendent, George claims that West Orange Cove continued the retaliation by reassigning her to the Education Center.

The defendants contend the undisputed facts of this case do not support George's claims, and that they are entitled to judgment as a matter of law. First, the defendants maintain George unequivocally announced her intention to retire, and the extension of her contract for only year was based on this statement and nothing else. Second, they argue any comments made by George were "private" rather than "public" and therefore, her expressive activity was not protected speech. Third, the defendants maintain that even if George's comments were protected, the same action would have been taken because of her announced intention to retire. Finally, the defendants contend George voluntarily accepted the position at the Education Center, and that she was chosen based on her educational and counseling background.

We begin with the well settled principle that teachers do not relinquish their rights to comment on matters affecting the operation of the public schools when they

---

2. Any claim of retaliation based on state law would be barred by the doctrine of sovereign immunity. The Texas Tort Claims Act waives sovereign immunity for school districts only when the tortious activity involves the use of motor vehicles. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001—101.109 (Vernon 1986). Therefore, George's retaliation claims are cognizable only under federal law.

accept employment with a school district. *See Pickering v. Board of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Likewise, schools are prohibited from discharging a teacher or failing to renew their contract simply because they engaged in a constitutionally protected activity. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ On the other hand, public schools must act as an employer in regulating the behavior and activity of its employees and promoting the efficient public administration of the schools. *See Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734; *Day v. South Park Indep. Sch. Dist.,* 768 F.2d 696, 700 (5th Cir.1985). This requires a delicate balancing between the interests of the school and the teacher's right to free expression. The court must consider "the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734.

■ When claiming retaliation for protected activity, the employee bears the initial burden of showing, first, the conduct was constitutionally protected and, second, the conduct was a "motivating factor" in the decision not to rehire them. *Mount Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Kirkland v. Northside Indep. Sch. Dist.,* 890 F.2d 794, 797 (5th Cir.1989); *Day v. South Park Indep. Sch. Dist.,* 768 F.2d at 700. *See also Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977) (discussing burden allocation and "motivating factors"). Once the employee makes the requisite showing, the burden shifts to the school to show, by a preponderance of the evidence, that it would have reached the same decision in the absence of the protected activity. *Mount Healthy City Sch. Dist.,* 429

U.S. at 287, 97 S.Ct. at 576; *Kirkland,* 890 F.2d at 797.

■ Whether the conduct is constitutionally protected depends on the nature of the speech. Specifically, the court must determine whether the speech is "public" or "private." *See Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708 (1983). This dichotomy is based on the principle that "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values' and is entitled to special protection." *Connick,* 461 U.S. at 145, 103 S.Ct. at 1689 (quoting *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. at 147–48, 103 S.Ct. at 1690–91.

A wide variety of conduct has been found to possess the requisite expressive element of public concern sufficient to bring it within the protection of the Constitution. *See, e.g., Rankin v. Independent Sch. Dist. No. I–3,* 876 F.2d 838 (10th Cir.1989) (comments about school's method of punishing students). Conversely, an even wider variety of conduct has been deemed to embrace "private" concerns. *See, e.g., Day v. Southpark Indep. Sch. Dist.,* 768 F.2d at 701 (complaint about teaching evaluation); *Vukadinovich v. Bartels,* 853 F.2d 1387 (7th Cir.1988) (dissatisfaction with board's decision to replace plaintiff as basketball coach).

■ We may assume without deciding that George's criticisms of Dr. Bourgeois are protected expression. As the defendants correctly point out, the plaintiff's evidence is minimal on this issue. The plaintiff does offer the affidavit of a fellow teacher who states that he and George criticized Dr. Bourgeois for his handling of school affairs. If George's comments were directed at Dr. Bourgeois' policies and job performance, they would fall squarely within the realm of "public" concerns. But we need not concern ourselves with this issue because although it is disputed, it is not material. George has failed to demonstrate that her comments were a motivating factor in either the exten-

sion of her contract or her transfer to the Center.

To prove that a forbidden consideration was a motivating factor in an employer's decision, "the employee must show that 'the employer *actually relied on* [the forbidden factor] in making its decision.'" *Langley v. Jackson State Univ.*, 14 F.3d 1070, 1075 (5th Cir.1994) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 109 S.Ct. 1775, 1790, 104 L.Ed.2d 268 (1989). This means George must show the defendants actually relied on her criticisms of Dr. Bourgeois in renewing her contract for only one year and later transferring her to the Education Center. The plaintiff's evidence, however, is simply nonexistent. There is no evidence the defendants relied on her comments in deciding to renew her contract for only one year. On the contrary, the affidavit testimony of two Board members demonstrates they relied exclusively on Dr. Bourgeois' recommendation. The recommendation, in turn, was based on George's uncertain retirement plans. Moreover, there is no evidence indicating that Dr. Bourgeois had an improper motive. The plaintiff's bare allegations are not sufficient.

In addition, there is no evidence that the decision to transfer George to the Education Center was motivated by her public comments. Even when viewed in the light most favorable to her, the evidence indicates that George was selected based on her qualifications, not on the basis of her comments concerning Dr. Bourgeois. If the plaintiff had evidence that her criticisms were a motivating factor in the defendants' decisions, she should have come forward with it. That was her burden, and she failed to meet it. Under these circumstances, the defendants are entitled to judgment as a matter of law on the plaintiff's claim of retaliation.

Even if George's criticisms were a motivating factor, the defendants would still be entitled to summary judgment on this issue.

The evidence is irrefutable that the defendants would have taken the same action in the absence of George's criticism. As stated above, the evidence demonstrates that the decision to renew George's contract for only one year was based on the uncertainty surrounding her retirement. As for her transfer to the Education Center, the defendants' evidence demonstrates that George was selected based on her qualifications, not on an improper motive. George has offered no evidence to refute this.

Because the plaintiff has failed to prove that her expressive activity was a motivating factor behind the defendants' decisions, the defendants are entitled to judgment on George's claims of retaliation.

### The Plaintiff's Due Process Claims

George makes three separate accusations which raise issues of due process. First, she claims the defendants violated her liberty interest under the Fourteenth Amendment. Second, she alleges the defendants' actions amounted to a violation of her substantive due process rights. Finally, she claims a property interest in the renewal of her contract which the defendants violated by their refusal to accord her procedural due process. We address each of these arguments separately.

### A. Liberty Interest

George claims the defendants violated her liberty interest under the Fourteenth Amendment.[3] Although her state court petition is not specific, it implies that the defendants, particularly Dr. Bourgeois, made false accusations concerning her performance as principal of the middle school. The defendants maintain there is no evidence of false accusations which damaged George's ability to obtain other employment, and the court agrees.

The word "liberty" as used in the Fourteenth Amendment "denotes not merely

---

**3.** In addition to her Fourteenth Amendment claim, the plaintiff also asserts the defendants violated her due process rights guaranteed by Article I, Section 19 of the Texas Constitution. No independent analysis of this claim is required because the due process clause of Article I, Section 19 is coterminous with the due process clause of the Fourteenth Amendment. *Price v. City of Junction, Texas,* 711 F.2d 582 (5th Cir. 1983); *Moore v. City of Port Arthur School Dist.,* 751 F.Supp. 671 (E.D.Tex.1990).

freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life....” *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). In order to vindicate a liberty interest, the plaintiff must first prove that one exists. *See Wells v. Hico Independent Sch. Dist.,* 736 F.2d 243, 256 (5th Cir.1984). To do this, the plaintiff must show that her employer, the government, has made false accusations that could “seriously damage” her standing in the community or that impose “a stigma or other disability” preventing her from pursuing “other employment opportunities.” 736 F.2d at 256 (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)). The presence of a false accusation is critical; non-renewal of a contract, in itself, is not sufficient to implicate this liberty interest. *Dennis v. S. & S. Consolidated Rural High Sch. Dist.,* 577 F.2d 338, 340 (5th Cir.1978).

■ There is no evidence that either Dr. Bourgeois or West Orange Cove made any false accusations or defamatory statements about George, let alone any that damaged her standing in the community. In addition, George has failed to prove she is precluded from other employment opportunities as a result of the defendant's actions. A motion for summary judgment requires the nonmovant, George in this case, to come forward with evidence demonstrating the existence of a genuine issue of material fact on every component of the nonmovant's case. *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d at 872. George has failed to do so. Therefore, the defendants are entitled to summary judgment on the plaintiff's claim that her liberty interest was violated.

**B. Property Interests and Procedural Due Process**

George contends she has a property interest in the renewal of her contract, and the school board's failure to renew her contract for two years amounted to a violation of procedural due process. Specifically, George asserts the “Term Contract Renewal Act,” Tex.Educ.Code Ann. §§ 21.201–21.211, which provides for automatic extension of term contracts unless the district complies with certain prerequisites, applies to her contract. She then argues the school board failed to comply with the statutory prerequisites, and this amounted to a denial of her due process rights under the Fourteenth Amendment.[4]

The defendants agree that George had a property interest in her contract, but they deny that she had any property interest in its renewal. They maintain George's property interest was limited to the time period stated in the contract and not beyond as she contends. They also agree that the Term Contract Nonrenewal Act applies to George's employment with West Orange Cove, but they argue that George received exactly what the Act requires—an extension of her contract.

■ In evaluating a claim that a plaintiff's due process rights have been violated by their employer's refusal to renew their contract, the court must first identify the property interest entitled to the protection of the Fourteenth Amendment. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). There is no significant property interest in governmental employment unless applicable law creates such an interest. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). “Property interests are not created by the Constitution, ‘they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....’ ” *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). George argues that applicable state law, specifically the Term Contract Nonrenewal Act, creates a property interest in the renewal of her contract. We agree.

The Term Contract Nonrenewal Act (TCNA) provides for automatic renewal of a teacher's term contract unless the school board furnishes the teacher with a hearing and notice of preestablished reasons for the nonrenewal. Tex.Educ.Code Ann. §§ 21.-

---

4. *See* footnote *3, supra.*

201–21.211 (Vernon 1987). The Texas Supreme Court held this statute vests the teacher with a property right entitled to protection under the Fourteenth Amendment. *Grounds v. Tolar Independent Sch. Dist.,* 856 S.W.2d 417 (Tex.1993).[5] Thus, it is clear that George had a property interest in the renewal of her contract.

The defendants argue that if George had a property interest in her contract, it was a property interest in her existing contract, not in its renewal. This argument misconstrues the Texas Supreme Court's decision in *Grounds v. Tolar ISD* as well as the TCNA itself. In *Grounds,* the court clearly held the property interest was in renewal, not in the existing contract. The court stated,

> we hold that the TCNA creates *a property interest in term-contract renewal* for teachers, warranting due process protection. Because the District failed to provide reasons for nonrenewal, it violated Ground's right to procedural due process.

856 S.W.2d at 420 (emphasis added).[6] Before the TCNA was enacted in 1981, teachers clearly had a property interest in their existing contracts. *See Thomas v. Board of Trustees of Galveston Indep. Sch. Dist.,* 515 F.Supp. 280 (S.D.Tex.1981). If George's property interest was vested solely in her existing contract as the defendants contend, the TCNA would be largely superfluous. It is safe to assume that the TCNA was not enacted as mere "legislative gloss" on an already well settled principle. *See Brown v. Memorial Villages Water Authority,* 361 S.W.2d 453 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.) (legislature is presumed to have intended statute to have effect). Thus, the court has no difficulty in holding that George's property interest in her contract extended to its renewal.

■■■ Although George had a property interest in renewal, it does not follow that she had a property interest in a *two-year renew-*

al. *See White v. South Park Indep. Sch. Dist.,* 693 F.2d 1163, 1166 (5th Cir.1982) (due process protection attach only if teacher has a property interest in a two-year renewal). Nothing in the TCNA requires the school to renew the teacher's contract for the same term as the expiring contract. It merely establishes procedures to be followed when the school board decides not to renew a teacher's contract. *See* Tex.Educ.Code Ann. §§ 21.201–21.211. Likewise, even the broadest possible reading of *Grounds v. Tolar ISD* fails to reveal a basis for accepting George's argument that she had a property interest in a two-year renewal.

Based on the court's review of Texas law, we conclude that George had no property interest in a two-year renewal. At most, she only had an expectancy of a two-year contract. As the Supreme Court stated in *Board of Regents v. Roth,*

> To have a property interest in a benefit, a person clearly must have *more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.*
>
> .    .    .    .    .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added).

George's expectancy is not sufficient to vest a property interest in renewal for two years. The TCNA clearly secures the benefit of renewal to teachers in Texas. It does not, however, entitle a teacher to renewal for more than one year. George has been em-

---

**5.** The court recognized that teachers have no contractual right to reemployment. 856 S.W.2d at 420 (citing *Perry v. Sindermann,* 408 U.S. at 601, 92 S.Ct. at 2699).

**6.** In *Grounds v. Tolar ISD,* the Texas Supreme Court expressly rejected *English v. Hairston,* 888 F.2d 1069 (5th Cir.1989) which held that teach-

ers do not have a property interest in renewal. *English* may have been correct before the TCNA was enacted, but as *Grounds* makes clear, it is no longer a correct statement of Texas law. *See also Murray v. Mount Pleasant ISD,* 754 F.Supp. 535 (E.D.Tex.1990) aff'd 928 F.2d 402 (following *English v. Hairston*).

ployed by West Orange Cove for more than 26 years, and she may well expect to work there until she retires. We would be hard pressed, however, to hold that the TCNA transforms this expectancy into a property interest in lifetime employment. It does not. Thus, we hold that George had a property interest in renewal, but no interest in a two-year renewal.

■■■ Having determined that George has a property interest in the renewal of her contract, the question now becomes whether she has been deprived of that interest. The Fourteenth Amendment restricts state governments from depriving a person of life, liberty or property without due process of law. It is axiomatic of course that if a person is not "deprived" of a property interest, no process is due.

> The Constitution contains no definition of the word "deprive," as used in the Fourteenth Amendment. To determine its signification, therefore, it is necessary to ascertain the effect which usage has given it, when employed in the same or a like connection.

*Munn v. Illinois*, 94 U.S. (4 Otto) 113, 123, 24 L.Ed. 77 (1876). Therefore, we must determine whether the renewal of George's contract for only one year deprived the plaintiff of her property interest in renewal. If it did not, the defendants are entitled to summary judgment on this point.

The essential characteristic of a deprivation is the separation of the plaintiff from the use and benefit of the property interest. In a typical deprivation case, the plaintiff's property right is terminated, and the central dispute is over the required process to be accorded the plaintiff. *See, e.g., Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (employment at a university); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (revocation of driver's license); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (denial of welfare benefits). In those types of cases, it is clear that the plaintiff is being deprived of their property interest. The state's termination of the right "deprives" the plaintiffs from any further use, enjoyment or benefit. Even a temporary separa-

tion of the plaintiff from the property right is a sufficient deprivation for purposes of the Fourteenth Amendment. *See Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (termination of utility services for non-payment).

In this case, however, the undisputed facts clearly establish that George has not been deprived of her property right in the renewal of her contract. First and foremost, her contract was renewed. She has continued to enjoy the benefits of employment with the school district and has done so without interruption. Since long before the series of events leading up to this litigation began, George has benefitted from an unbroken string of renewed contracts. At no time was she without a contract. Under these circumstances, we cannot say that George has been "deprived" of the use and benefit of renewal.

■■■ George insists that the defendants' failure to follow the procedures set out in the TCNA is actionable as a violation of her due process rights. We disagree. Nothing in the TCNA indicates the legislature intended a private cause of action for failure to comply with the Act's requirements. To the extent that she claims a violation of due process resulting from this alleged failure to follow the TCNA, George is actually asserting that she has a property interest in due process. She does not. The TCNA created a property interest in renewal, not in the TCNA itself. Therefore, for this and the reasons stated above, George's procedural due process claims fail, and the defendants are entitled to summary judgment.

## C. Substantive Due Process

■■■ George's state court petition also alludes to a violation of substantive due process, although the petition fails to state precisely how this occurred. For present purposes, the court will assume that a violation of substantive due process rights, if any, was caused by the defendants' failure to renew her contract for two years. The defendants contend their decision to renew George's contract for only year was motivated solely by her possible retirement.

The Fifth Circuit recently addressed the issue of substantive due process violations in the context of public school employment.

To state a substantive due process claim a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest. *Brennan v. Stewart*, 834 F.2d 1248, 1256 (5th Cir. 1988). Judicial evaluation of academic decisions requires deference and they are overturned only if they are "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." ·*Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, [513] 88 L.Ed.2d 523 (1985).

*Williams v. Texas Tech Univ. Health Sciences Center*, 6 F.3d 290, 294 (5th Cir.1993).

The defendants are entitled to summary judgment on this claim as well. First, as the court held above, George was not "deprived" of her property interest. Therefore, her claim is not actionable under the Fourteenth Amendment. In addition, there is no evidence the defendants did not exercise professional judgment. In fact the defendants' evidence tends to establish that they did, and the plaintiff has not refuted it. Accordingly, this claim fails, and the defendants are entitled to judgment as a matter of law.

### *The Plaintiff's Claim for Mental Anguish*

[27] George claims that the defendants' unconstitutional conduct proximately caused her to suffer mental anguish and emotional anguish.[7] It is axiomatic, in this situation, that if the defendants did not violate the plaintiff's constitutional rights, the plaintiff cannot recover damages for mental anguish. *See Sutton v. Cleveland Bd. of Educ.*, 726 F.Supp. 657 (N.D.Ohio 1989). Even where a constitutional violation is found, the plaintiff must come forward with evidence demonstrating they actually suffered mental anguish. *Biggs v. Village of Dupo*, 892 F.2d 1298 (7th Cir.1990). In this case, the defen-

dants did not violate George's constitutional rights. Therefore, George cannot maintain a claim for mental anguish. Even if the defendants had violated her rights, she has not produced any evidence of demonstrable mental suffering. Accordingly, the defendants are entitled to summary judgment on George's claim of mental anguish.

### *The Plaintiff's Claim for Exemplary Damages*

■ George has alleged that the defendants' conduct was so egregious, she is entitled to exemplary damages. The purpose of punitive damages is punish the defendant and deters others from similar conduct. *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). In this case, however, the defendants have done nothing wrong. Therefore, they are entitled to summary judgment on the plaintiff's claim for punitive damages.

### *CONCLUSION*

The plaintiff obviously believes she was treated unfairly by the defendants, but unfair treatment must be actionable under state or federal law in the first instance. The federal courts were never intended to be debating societies or open forums dedicated to airing personal grievances with no foundation in law. *See generally Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). To justify the expense of a trial on the merits, there must a case or controversy and disputed issues of material fact between the parties. In this case, we have the former but not the latter. Accordingly, the defendants are entitled to judgment as a matter of law.

It is therefore ORDERED that the defendant's motion for summary judgment is GRANTED as to all the plaintiff's claims, and judgment is to be entered accordingly.

So ORDERED.

---

7. George is not asserting a supplemental state law claim for intentional infliction of emotional distress.